CLARENCE H. CHILDS, Receiver,

*vs.*

HENRY B. CLEAVES.

Cumberland.   Opinion October 30, 1901.

*Corporations.  Stockholders' Double Liability.  Receiver.  Jurisdiction.  Foreign Judgment.   Minn. Const. Art. IX, § 13;  Minn. Gen. Stat. 1894, c. 76, §§ 5905–5911;  Minn. Stat. c. 33, § 21.*

In an action brought by a receiver of a foreign corporation in this State to enforce the double liability of the defendant, who was a non-resident stockholder in a Minnesota banking corporation, and which was heard on demurrer to plaintiff's declaration setting out all the facts, *it is held:*

1.   That the defendant, a non-resident stockholder, is bound by the decrees of the Minnesota court in which the parent suit was instituted under the statutes of that state and whereby, the assets of the corporation having been sequestered, the plaintiff was appointed receiver for creditors.

2.   That it is not essential that non-resident stockholders who were not in reach of the process of the court and against whom it could not render a personal judgment, should be made parties to such a suit, and that for the purpose of ascertaining the assets and liabilities of the corporation they were represented by the corporation, or by its general receiver appointed prior to the institution of the suit, and as to such matters they are bound by the adjudication though not personally made parties.

3.   Such non-resident stockholders, however, are not concluded by the finding upon the ultimate question of their individual liability, nor as to the measure of such liability, which is not an asset of the corporation, and in which neither the corporation nor its receiver has any legal interest to render them representatives of the stockholders.

4.   That for the purpose of enforcing the liability of stockholders, under the Minnesota statute, the plaintiff in his capacity of creditor's receiver may maintain an action in a state jurisdiction other than that of his appointment,

5.   It is not necessary to hold that the plaintiff's receiver succeeded to the rights of either the corporation or of the creditors.   His authority emanates directly from the statute under which he was appointed.   It appears from the declaration in the writ that he was expressly authorized, and directed by a decree of the Minnesota court, to institute in his own name as receiver all auxiliary actions necessary to enforce the liability of non-resident stockholders.

6.  The principle of comity between states is broad enough to extend recognition to the plaintiff in the courts of this state.

7.  It concerns the due administration of justice that all stockholders, wherever they reside, should be compelled by proceedings somewhere to perform the statutory obligations towards creditors of the corporation, which they have assumed by becoming stockholders.

8.  An increasing tendency has been observable, in both state and federal jurisdictions during the last decade, to sanction the enforcement of these obligations extraterritorially in any court of competent jurisdiction, except where the rights of a citizen in the state of the forum are thereby prejudiced, or the public policy of such state is contravened.

9.  It is apparent that no rights of domestic creditors can intervene, since the law creating the stockholders' liability declares that it shall be enforced for the benefit of all creditors of the corporation.

10.  The Minnesota statute authorizing the collection from stockholders of only so much as may be necessary to satisfy the debts of the corporation and requiring a pro rata distribution of it among all the creditors, is seen to be free from the less equitable features of those statutes which authorize a single creditor, without a pro rata assessment, to maintain an action against a single stockholder for his own benefit and not for the benefit of all the creditors.

On exceptions by defendant.     Overruled.

Action to enforce the statutory or double liability of the defendant, as a non-resident stockholder in the Bank of New England, a corporation organized under the laws of Minnesota. The case, argued on demurrer, is stated in the opinion.

*E. M. Rand,* for plaintiff.

*J. W. Symonds, D. W. Snow, C. S. Cook and C. L. Hutchinson,* for defendant.

Counsel argued: The fundamental objection to maintaining this action is, that it would discriminate in favor of resident stockholders and against non-resident stockholders to such a degree that no rule of comity should permit of its recognition. It would hold the non-resident stockholder is not a necessary party, and that the ascertainment of the amount of his liability in such a suit is binding upon him in his absence. It gives to the resident stockholder, who must be made a party, the right of contribution from other stockholders. It denies any such right to the non-resident stockholder, unless he chooses to appear in the original action.

It would hold that the resident stockholder, under the Minnesota

law, contracted as to one kind of remedy, and the non-resident stockholder as to another kind of remedy. Its effect " would subject stockholders residing out of the State to a greater burden than domestic stockholders," as stated by the Supreme Court in *Bank* v. *Francklyn*, 120 U. S. 747. In substance and effect, though not in form, it would render judgment against a non-resident stockholder for his personal liability in his absence and without a hearing.

The corporation is not made a defendant in the principal action as a representative of the stockholders in any sense. It is joined of necessity only where there are corporate assets which ought to be applied to the payment of the debts. Otherwise, it is a proper party, but only for the purpose of establishing against it as a finality the amount of the indebtedness for which the stockholders are liable. The primary right to be adjudicated in such an action is the stockholder's liability. As an incident thereto, where there are corporate assets which should be applied to the payment of the indebtedness, the corporation must be brought in for the purpose of sequestrating and reaching such assets. If there are no such assets the corporation need not be made a party at all. *Booth* v. *Dear*, 96 Wis. 516 ; *Sleeper* v. *Goodwin*, 67 Wis. 577 ; *In re Insurance Co.* 56 Minn. 180 ; *Minneapolis Baseball Co.* v. *City Bank*, 66 Minn. 441.

A liberal course in the enforcement of the laws of other States in proper cases should be the rule, but the paramount duty of our judicial system is to safeguard our own State policy and prevent injustice to our own people within reasonable limits. *Gilman* v. *Ketcham*, 84 Wis. 60 ; *Emery* v. *Burbank*, 163 Mass. 326 ; *Seamans* v. *Temple Co.*, 105 Mich. 400 ; *Bank* v. *Ellis*, 172 Mass. 39 ; *Dearing* v. *Hardware Co.*, 33 App. Div. 31, 53 N. Y. Supp. 513. *Eau Claire Nat. Bk.* v. *Benson*, 82 N. W. Rep. 604.

Receiver not vested with any of the rights or assets of the corporation and therefore cannot maintain a suit against a stockholder in another jurisdiction. *Hale* v. *Hardon*, 89 Fed. Rep. 283-288 ; *Wigton* v. *Bosler*, 102 Fed. Rep. 70. The receiver was a general receiver in *Howarth* v. *Angle*, 162 N. Y. 179 ; *Howarth* v. *Lombard*, 175 Mass. 570 ; and *Howarth* v. *Ellwanger*, 86 Fed. Rep. 54,

and these cases are not applicable to the decree appointing the receiver, nor the Minnesota statute. In *Hayward* .v. *Leeson*, 176 Mass. 310, the court says: "The last objection made by the defendants is that the plaintiff as receiver, cannot bring the suit in his own name; and we think that this objection is well taken. The final order directing the receiver to prosecute these suits is as follows: 'Said John K. Hayward, receiver, be, and is hereby, directed to proceed with said causes in the courts of Massachusetts, either in his own name as receiver, or in the name of the East Tennessee Land Company, or jointly in his name as receiver and in the name of the East Tennessee Land Company, as he may be advised by counsel to be proper, and in accordance with the rules of practice in the courts in which such cases are being prosecuted.' This order does not operate as an assignment to the receiver of these choses in action. Neither did the previous orders, under which this receiver was acting, operate as an assignment of them. The plaintiff was appointed a receiver by order dated April 20, 1897, providing that he should 'possess the power and authority conferred by former orders' on the receivers. The original order appointing receivers under the general creditors' bill provided that the receiver should 'collect, take possession of, preserve, and care for all of the property, real, personal, and mixed, bonds, notes, bills, drafts, and other choses in action of the defendant wherever found, as well as of the accounts, books, and papers of the defendant, and   .   .   . hold and dispose of the same under the order of this court.' There is nothing in the original order under which the bills in equity in the cases at bar were filed which in any way affects this question. The plaintiff, as receiver, by virtue of these orders, has the powers usually conferred by a court of equity upon a receiver to preserve property pending litigation, and nothing more. Mr. Justice Gray, speaking for the Supreme Court of the United States of the powers of a receiver under a similar order, said: 'The utmost effect of his appointment is to put the property from that time into his custody as an officer of the court, for the benefit of the party ultimately proved to be entitled, but not to change the title, or even the right of possession in the property.' *Union Bank of Chicago*

v. *Kansas City Bank*, 136 U. S. 223, 236, 10 Sup. Ct. 1013, 34 L. Ed. 341.    That such a receiver cannot sue in his own name to enforce a right of action of the corporation is settled.    *Wilson* v. *Welch*, 157 Mass. 77."    See *Hale* v. *Tyler*, U. S. Cir. Court, Maine District, opinion by Mr. Justice Putnam, July 25, 1900.    *Whitman* v. *Oxford National Bank*, 176 U. S., 558, and *Hancock National Bank* v. *Farnum*, 176 U. S. 640, cases which arose under the Kansas statutes, are not applicable to the case at bar.    The Kansas statutes do not attempt in any way to discriminate between residents and non-residents.    The Minnesota statutes do discriminate.

SITTING:  WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, FOGLER, POWERS, JJ.

WHITEHOUSE, J.    This is an action at law in which the defendant is summoned to answer to the plaintiff, Clarence H. Childs of Minneapolis, " as receiver for the collection and enforcement of the liability of stockholders of the Bank of New England," a corporation organized under the laws of the State of Minnesota.    The action is brought to enforce the double liability of the defendant who was a non-resident stockholder in the corporation.

In 1893, the bank in question, upon complaint filed by the State of Minnesota, one of its creditors, was adjudged insolvent by a district court in Minnesota, and a general receiver was appointed, by whom all of the existing assets of the bank were received and distributed.    The administration of the estate by this receiver was completed in July, 1897.

In the meantime, in 1895, it having become apparent that the existing assets were insufficient to discharge the entire indebtedness of the bank, an order was issued by the court, upon petition of another creditor, to have all of the resident stockholders impleaded in the original complaint upon which the adjudication of insolvency was made, for the purpose of enforcing their statutory liability to the creditors of the bank who might thereafter intervene.    Thereupon all of the resident stockholders became parties to that proceeding, an order was entered by the court limit-

ing the time within which creditors might intervene and present their complaints, and on the ninth day of July, 1897, a final decree was entered in favor of the intervening creditors as follows, to wit:

"First: That the several sums due and owing to the several creditors who had intervened in said action by the defendant Bank of New England, which said indebtedness was therein adjudged and decreed, aggregated the sum of ninety-three thousand, three hundred fifteen dollars and thirty cents.

"Second: That the total capital stock of said Bank of New England was one hundred thousand dollars, all of which was issued and outstanding at the time of the contracting of said indebtedness and the date of the assignment of said bank, as aforesaid.

"Third: The names of the several resident stockholders and the amount of stock held by each.

"Fourth: That each of said stockholders was liable upon said stock to the creditors therein ascertained for an amount equal to double the par value of stock held by him.

"Fifth: That said other intervening plaintiffs and said intervening creditors so ascertained, recover from each of the several stockholder defendants within the State of Minnesota a sum equal to double the par value of the stock held by each stockholder.

"Sixth: That this plaintiff be appointed receiver therein for the purpose of collecting the judgment so rendered against each of the defendants therein and for the further purpose of instituting all necessary actions and proceedings for the purpose of collecting from the non-resident stockholders of said corporation, to the end that any and all sums so collected by him be divided ratably among the creditors of said corporation so enumerated in said judgment and in proportion to the amount of their respective claims.

"Seventh: That the court retain jurisdiction of said cause for the furtherance of justice and equity."

The plaintiff duly qualified as receiver and gave his bond to the

court in the sum of fifty thousand dollars for the faithful perform-
ance of his duties; and on the fifteenth day of August, 1898, a
further order of the court was made authorizing and directing him to
institute, in his own name as receiver, all auxiliary actions necessary
to enforce the liability of non-resident stockholders.   The corpor-
ate assets had proved sufficient to pay only the preferred claim of
the State of Minnesota, so that at the time of the entry of judg-
ment against the stockholders there was due to the intervening
creditors the sum of $93,315; and at the time of the commence-
ment of this action the receiver, in discharge of his duty under the
decree, had been able to collect no more than $35,000.

This defendant was never served with process, and never in any
manner entered his appearance in the proceeding in the district
court of Minnesota.

I.   The case comes to the law court on a general demurrer
interposed by the defendant to the plaintiff's declaration which duly
set out the facts above stated.   The presiding justice overruled the
demurrer and adjudged the declaration good.   Two questions are
thus presented to the court:

First, to what extent, if at all, is this defendant, a non-resident
stockholder, bound by the decrees of the Minnesota court in which
the parent suit was instituted?   And, second, whether the plaintiff,
in his capacity as receiver for the creditors, appointed by the Min-
nesota court, for the purpose of enforcing the liability of stock-
holders, is entitled to maintain this action in a state jurisdiction
other than that of his appointment, either on grounds of comity or
otherwise?

Article IX, Section 13, of the Constitution of Minnesota pro-
vides as follows:

"Third.   The stockholders in any corporation and joint associa-
tion for banking purposes, issuing bank notes, shall be individually
liable in an amount equal to double the amount of stock owned by
them for all the debts of said corporation or association; and such
individual liability shall continue for one year after any transfer or
sale by any stockholder or stockholders."

And in Chapter 33, Section 21, of the statutes of Minnesota is found this provision:

"And the stockholders in each bank shall be individually liable in an amount equal to double the amount of stock owned by them for all the debts of such bank, and such individual liability shall continue for one year after any transfer or sale of stock by any stockholder or stockholders."

The only provisions found in the statutes of Minnesota for enforcing this liability are contained in Gen. St. 1894, chap. 76, §§ 5905–5911, which are as follows:

"Sec. 5905. Whenever any creditor of a corporation seeks to charge the directors, trustees, or other superintending officers of such corporation, or the stockholders thereof, on account of any liability created by law, he may file his complaint for that purpose in any district court which possesses jurisdiction to enforce such liability.

"Sec. 5906. The court shall proceed thereon as in other cases, and, when necessary, shall cause an account to be taken of the property and debts due to and from such corporation, and shall appoint one or more receivers.

"Sec. 5907. If, on the coming in of the answer, or upon the taking of any such account, it appears that such corporation is insolvent, and that it has no property or effects to satisfy such creditors, the court may proceed, without appointing any receiver, to ascertain the respective liabilities of such directors and stockholders, and enforce the same by its judgment, as in other cases.

"Sec. 5908. Upon a final judgment in any such action to restrain a corporation, or against directors or stockholders, the court shall cause a just and fair distribution of the property of such corporation, and of the proceeds thereof, to be made among its creditors.

"Sec. 5909. In all cases in which the directors or other officers of a corporation, or the stockholders thereof, are made parties to an action in which a judgment is rendered, if the property of such corporation is insufficient to discharge its debts, the court shall proceed to compel each stockholder to pay in the amount due and

remaining unpaid on the shares of stock held by him, or so much thereof as is necessary to satisfy the debts of the company.

" Sec. 5910. If the debts of the company remain unsatisfied the court shall proceed to ascertain the respective liabilities of the directors or other officers, and of the stockholders, and to adjudge the amount payable by each, and enforce the judgment, as in other cases.

"Sec. 5911. Whenever any action is brought against any corporation, its directors or other superintending officers, or stockholders, according to the provisions of this chapter, the court, whenever it appears necessary or proper, may order notice to be published, in such a manner as it shall direct, requiring all the creditors of such corporation to exhibit their claims and become parties to the action, within a reasonable time, not less than six months from the first publication of such order, and in default thereof, to be precluded from all benefit of the judgment which shall be rendered in such action, and from any distribution which shall be made under such judgment."

It thus appears that the several orders and decrees made by the court of Minnesota, in the course of its proceedings, requiring an account to be taken of the corporate property and debts, and ascertainments to be made respecting the names of the several stockholders and the amount of stock held by each, were in harmony with the provisions of the constitution and laws of Minnesota above quoted. It will be observed, however, that while the court rendered personal judgment only against the Minnesota stockholders, it expressly authorized the receiver to institute all necessary actions for the purpose of collecting from the non-resident stockholders. The defendant claims that the proceedings under the Minnesota statute instituted by the creditors, and which form the basis of this action, were essentially an action against the stockholders to enforce their individual liability, and not an action against the corporation, and therefore res inter alios and of no effect against this defendant, a non-resident stockholder who did not become a party to the action.

This question has been the subject of frequent examination in

recent years in both the federal and state courts, and the great weight of authority in both jurisdictions is undoubtedly against the defendant's contention.

In considering the scope and purpose of a statute, regard is properly had, in the first instance, to the construction placed upon it by the courts of the state in which it was enacted, this being deemed a part of the law itself.

In *Hanson* v. *Davison*, 73 Minn. 454, the court say: "Equitable considerations and the statute require that an action of the character prescribed by chapter 76 be brought by and on behalf of all the creditors, and against the corporation and all of the stockholders of whom the court has jurisdiction, to determine the amount remaining due to such creditors, respectively, after the assets of the corporation have been exhausted; thereby providing a basis for determining the extent of the liability of the respective stockholders. The judgment in such original action, determining the amount of the corporate debts remaining unpaid, is binding on all of the stockholders, whether parties to the action or not, unless impeached for fraud. A judgment against the corporation is, in effect, a judgment against the stockholders in their corporate capacity. They are represented by the corporation in the action.

"In principle, there can be no difference in this respect between an action to enforce an unpaid subscription and one to enforce a stockholder's liability. The action required to be brought by chapter 76 is the original action for the sequestration and distribution of the fund to be derived from the stockholder's liability, and the decree entered therein is a final and conclusive determination of the amount (unless impeached for fraud) for which the stockholders are liable, not exceeding the maximum limit of liabilities as fixed by law. As the amount and par value of the stock issued and outstanding is a matter of record and readily proven in any action, there is nothing to prevent the prosecution, after such decree is entered, of an ancillary action in another jurisdiction by the receiver appointed to collect and distribute its funds arising from stockholders' liability in the original action, or by any other party or person who may be appointed by the court for that

purpose, against any stockholder who was not made a party to the original action, to collect from him the amount of his liability on account of the debts of the corporation, for the benefit of all the creditors." See also *Holland* v. *Development Co.*, 65 Minn. 324; *Marson* v. *Deither*, 49 Minn. 423 ; *Olson* v. *Cook*, 57 Minn. 552; *First Nat. Bank* v. *Gustin*, 42 Minn, 327.

But the principle that stockholders represent the corporation and that a judgment against the corporation is conclusive against the stockholders with respect to corporate matters, may properly be termed familiar and well-settled. It is established beyond question by both state and federal authority. In *Hawkins* v. *Glenn*, 131 U. S. p. 329, the chief justice says: "Sued after such an order of court, the defendant does not deny the existence of any one of the facts upon which the order was made, but contends that there has been no call as to him, because he was not a party to the cause between creditors and corporation. We understand the rule to be otherwise, and that the stockholder is bound by a decree of a court of equity against the corporation in enforcement of a corporate duty, although not a party as an individual, but only through representation by the company. A stockholder is so far an integral part of the corporation that, in the view of the law, he is privy to the proceedings touching the body of which he is a member."

But a more recent case to this effect is *Hancock National Bank* v. *Farnum*, 176 U. S. 640, in which it is said: "Now, as the judgment rendered in the Kansas court is in that State not only conclusive against the corporation, but also binding upon the stockholder, it must, in order to have the same force and effect in other States of the Union, be adjudged in their courts to be binding upon him, and the only defenses which he can make against it are those which he could make in the courts of Kansas. The question to be determined in this case was not what credit and effect are given in an action against a stockholder in the courts of Rhode Island to a judgment in those courts against the corporation of which he is a stockholder, but what credit and effect are given in the courts of Kansas in a like action to a similar judgment there rendered. Thus, and thus only, can the full faith and credit pre-

scribed by the constitution of the United States and the act of
Congress be secured.  . . . .

"The law and usage in Kansas, prescribed by its legislature and
enforced in its courts, make such a judgment not only conclusive
as to the liability of the corporation, but also an adjudication bind-
ing each stockholder therein.  We do not mean that it is conclu-
sive as against any individual sued as a stockholder, that he is one,
or if one, that he has not already discharged by payment to some
other creditor of the corporation the full measure of his liability,
or that he has not claims against the corporation, or judgments
against it, which he may, in law or equity, as any debtor, whether
by judgment or otherwise, set off against a claim or judgment, but
in other respects it is an adjudication binding him.  He is so far a
part of the corporation that he is represented by it in the action
against it."   See also *Glenn* v. *Liggett*, 135 U. S. 533 ; *Great
West. Tel. Co.* v. *Purdy*, 162 U. S. 329 ; *Ball* v. *Reese*, 58 Kan.
614.

In the recent case of *Whitman* v. *Oxford Nat. Bank*, 176 U. S.
559, an action brought by an individual creditor to enforce a
non-resident stockholder's liability, the court say:    "The lia-
bility which by the constitution and statutes is thus declared to
rest upon the stockholder, though statutory in its origin, is
contractual in its nature.  . . . . .   While the statute of
Kansas permitted the forming of the corporation under certain
conditions, the action of these parties was purely voluntary.   In
other words, they entered into a contract authorized by statute.
. . . .   And as this liability is one which is contractual in its
nature, it is also clear that an action therefor can be maintained in
any court of competent jurisdiction."   See also *Hancock Nat.
Bank* v. *Ellis*, 172 Mass. 39; *Bell* v. *Farwell*, 176 Ill. 489; *West
Nat. Bank* v. *Lawrence*, 117 Mich. 669; *Paine* v. *Stewart*, 33
Conn. 516; *Cushing* v. *Perot*, 175 Pa. 66; and *Guerney* v. *Moore*,
131 Mo. 650, in which the court say, "The ordinary statutory
liability of a stockholder is a contractual liability.  . . . .
"It does not follow that, because people in this commonwealth
have restricted the liability of stockholders in corporations created

by virtue of our own laws to the amount of their stock, they will
refuse to enforce in their courts the contracts of its own citizens
who voluntarily go into other states and become stockholders in
corporations under their laws, which impose upon stockholders a
personal liability in excess of the amount of stock taken.  Such a
contract is not against public policy.  It contravenes no principle
of good morals and has no mischievous tendency.  It is not in any
sense repugnant to our ideas of honesty or justice."

But one of the most valuable of all the recent contributions to
the discussion of this subject is found in *Hale* v. *Hardon*, 95
Fed. Rep. 747.  This, like the case at bar, was an ancillary suit
brought in the U. S. Circuit Court for the district of Massachusetts
by a receiver appointed in Minnesota to enforce the liability of a
non-resident stockholder to the creditors; and it was held in an
elaborate opinion by Judge Aldrich that for the purpose of ascer-
taining the assets and liabilities of the corporation, non-resident
stockholders were represented by the corporation, or by its general
receiver, and as to such matters they were bound by the adjudica-
tion though not personally made parties; but as the individual
liability is directly to the creditors and not an asset of the corpora-
tion, it was considered that the non-resident stockholder was not
concluded by a finding upon the ultimate question of his individual
liability, nor as to the measure of such liability.  In the opinion it
is said:  " As our conclusion is that the proceedings in Minnesota
were sufficiently comprehensive as to domiciliary adjudications and
ascertainments, and such as the constitution and statutes of Minne-
sota contemplated, and such as the statutes required, it follows
that the defendant's liability results by force of the constitutional
provision and the statutes in respect to which he by implication
contracted by becoming a stockholder, and that the plaintiff is
entitled to recover, provided he is entitled to maintain his action
in this jurisdiction as a receiver, or representative of the creditor
interests, in and of the parent proceedings in Minnesota."

In like manner, as it appears from the declaration in the case at
bar that the decree of the court in the corporate domicile respect-
ing the indebtedness of the corporation, and the ascertainments to

be made in regard to the stockholders, were such as were authorized and required by the statute of Minnesota, it is clear that upon the first question presented the demurrer was properly overruled.

II. But it is insisted, in behalf of the defendant, that as the plaintiff receiver is not vested with any of the rights or assets of the corporation, he is not entitled to maintain a suit against a stockholder in another jurisdiction. It is contended that his official character is not essentially different from that of an ordinary master in chancery, appointed as the hand of the court to render incidental aid in the litigation.

It has been seen that, under the provisions of chapter 76 of the Minnesota statutes, above quoted, authorizing proceedings by creditors to enforce the statutory liability of officers, directors and stockholders, "the court shall proceed thereon as in other cases, and, when necessary, shall cause an account to be taken of the property and debts due to and from such corporation, and shall appoint one or more receivers"; that if it appears that the corporation is insolvent, the court may proceed without appointing any receiver to ascertain the liabilities of stockholders "and enforce the same by its judgment as in other cases"; that upon final judgment the court shall cause a just and fair distribution of the proceeds of the property of the corporation to be made among its creditors; that if the property of the corporation is insufficient to satisfy its debts, the court shall enforce the payment of anything unpaid on the shares of stock, and if the debts still remain unsatisfied,—the court shall proceed to ascertain the liabilities of the stockholders and adjudge the amount payable by each and enforce the judgment "as in other cases."

Here, again, we should look to the decisions of the Minnesota courts for some declaration of the true purpose and policy of the legislature in enacting this statute. In the first place, as has already appeared, it has been held repeatedly in that state that this constitutional, or statutory liability of the stockholders, is a liability to the creditors. It forms no part of the assets of the corporation, and it cannot be enforced by the corporation. Hence, it

is obvious, that the receiver originally appointed in this case to receive and distribute the existing assets of the bank, unless expressly authorized by the statute, would have no authority to enforce the individual liability of stockholders for the purpose of paying the debts of the corporation. *In re People's Live Stock Ins. Co.*, 56 Minn. 180; *Olson* v. *Cook*, 57 Minn. 552, supra. And inasmuch as the general scheme of liquidation devised by the Minnesota statute requires an accounting and a pro rata distribution among all the creditors, it follows that individual creditors could not maintain an action under this statute against an individual stockholder either in Minnesota or elsewhere. The practical result would be that unless the plaintiff receiver, appointed by the court under authority of the statute for the express purpose of "instituting all necessary actions and proceedings for the purpose of collecting from the non-resident stockholders" any sums due for the benefit of all the creditors, can be permitted to maintain a suit for that purpose in extraterritorial jurisdictions upon the principle of comity or otherwise, the remedy provided by the statute would be a barren and inoperative one except as against the stockholders in Minnesota; and while non-resident stockholders would thus have the right to share in all the profits of a successful enterprise, they could not be compelled to fulfil their promises to creditors in the case of a losing one.

Again, it has already been seen that *Hanson* v. *Davison*, 73 Minn., supra, contains an express recognition of the right of such a receiver as this plaintiff to maintain an action in another jurisdiction to enforce the liability of a non-resident stockholder; and in *Railway Co*. v. *Gebhard*, 109 U. S. p. 531, it is said: "A corporation must dwell in the place of its creation and cannot migrate to another sovereignty. . . . . Whatever legislative control it is subjected to at home must be recognized and submitted to by those who deal with it elsewhere. . . . . Such being the law, it follows that every person, who deals with a corporation, impliedly subjects himself to such laws of the foreign government, affecting the affairs and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes."

In Volume 3 of Thompson on Corporations, § 3492, referring to the "two courses open to creditors," the author says: "The other course . . . . is to bring the suit on behalf of the creditors, to procure the appointment of a receiver, to have an account taken and stated, and an assessment upon all the shareholders ordered, and to enforce that assessment by supplementary actions brought by the receiver wherever the shareholders may be found. Where the latter course is taken, no objection is perceived to mingling the two kinds of procedure so far as to make such stockholders as may be found within the jurisdiction parties defendant, and to rendering decrees against them in personam, without requiring the receiver to bring separate actions at law against them,—which practice is sanctioned by the decision first above cited. This would leave him free to bring actions at law against such stockholders as might reside in other jurisdictions, as was done in the Glenn cases." See *Hawkins* v. *Glenn*, 131 U. S. 319; *Glenn* v. *Liggett*, 135 U. S. 533.

In Volume 2 of Morawetz on Corporations, § 902, the author says: "When the liability of the shareholders is imposed for the purpose of providing a general fund for the security of creditors, in addition to the company's capital, the proper method of proceeding seems to be to have a receiver appointed to take charge of the fund belonging to the creditors, and distribute it ratably among them." See also *Gluck & Becker* on Receivers of Corp., § 58, p. 188.

In *Cushing* v. *Perot*, 175 Pa. St. 66, it was held that a single foreign creditor of an insolvent trust company in Kansas could not maintain an action in Pennsylvania to enforce the statutory liability of a stockholder residing in that state after a receiver had been appointed by the Kansas court having jurisdiction over the corporation; but that the right to sue for that purpose was in the receiver. In the opinion the court say: "A receiver represents not only the corporation, but all its creditors, and as to the latter it is his duty to secure all the assets available for their payment. For this purpose he succeeds to their rights and has all the powers to enforce such rights that the creditors before his appointment had in their own behalf, even though such powers be beyond those

which he has as the representative of the corporation alone.    As
each creditor may sue, the right is equal in all and common to all,
and hence the receiver who represents all alike is the proper party
to assert the common right and pursue the common remedy for the
common benefit.   .   .   .   .   In this manner the rights of all will
be protected and justice done in a single proceeding in which every
one will get what is his due, no one will be called upon to pay
more than his fair proportion, and the expense, delay, inconven-
ience and inevitable occasional injustice of separate actions by
different creditors against different stockholders with their attend-
ant legion of resulting actions for contribution, will be avoided."

In *Relfe* v. *Rundle*, 103 U. S. 222, the statute provided that the
Superintendent of Insurance should become trustee of the funds
of any insolvent life insurance corporation of Missouri.    In the
opinion the court say:   "The law which clothed him with this
trust was in legal effect part of the charter of the corporation.
.   .   .   .   His authority does not come from a decree of the court,
but from the statute.   .   .   .   .   The appellees, when they con-
tracted with the Missouri corporation, impliedly agreed that if the
contract was dissolved under the Missouri laws, the superintendent
of the insurance department of the state should represent the com-
pany in all suits instituted by them affecting the winding up of its
affairs."    See also *Parsons* v. *Insurance Co.*, 31 Fed. Rep. 305.

In *Davis* v. *Gray*, 16 Wall. 203, we are reminded that in the
progressive development of equity the functions of receivers are
continually broadening, and with reference to the statutes as the
source of their powers, the court say :   " We see no reason why a
court of equity, in the exercise of its undoubted jurisdiction, may
not accomplish all the best results intended to be secured by such
legislation without its aid."

But the case of *Hale* v. *Hardon*, 95 Fed. Rep., supra, is also a
leading case in the First U. S. Circuit upon this question of the
capacity of a receiver, appointed by authority of the Minnesota
statute under consideration, to maintain an action in a foreign juris-
diction.    The opinion contains a critical analysis of the statute and
an exhaustive discussion of the whole subject in the light of both

reason and authority. On page 771 it is said: "The plaintiff is not a common law receiver representing the interests of all the parties; he is not a statutory receiver by express personal or official designation, as in *Relfe* v. *Rundle*, supra; he is not a receiver who has leave to sue; but he is a receiver appointed by the court, under an express statutory provision, and an imperative requirement that the court shall appoint, and is exercising the functions which the law-making power intended he should exercise, and is exercising such power under the authority of the statute conferred by the court, not by law, as in the other class of cases, but by express authority and direction, which charge him with the specific duty. It being the statutory intent to have the separate and distinct interests of the creditors against stockholders represented by a separate and distinct statutory agency, an express provision 'that the court shall appoint one or more receivers for the interests of the corporation, and a separate receiver for such interests of the creditors,' would have meant no more than the provision actually employed that 'the court . . . . shall appoint one or more receivers' means under fair and reasonable intendment." And on page 775: "Whether a receiver shall or shall not maintain an action extraterritorially is not a question of absolute right. A receiver does not possess the absolute right to sue in a foreign jurisdiction. Neither does an absolute right exist on behalf of a defendant that he shall not sue. Under our system of territorial and state divisions, and the resulting quasi independent judicial systems, there is and can be no imperative and absolute right on the subject. If this action at law is maintained extraterritorially in favor of a receiver, in aid of a parent proceeding in Minnesota, it is upon wholesome grounds of public policy, and of justice and comity. . . . . As such a rule would operate in the direction of right and equity and in the direction of a convenience, and would effectuate the purposes of justice, we think it should be held to exist as an inherent necessity in our system of government."

The case of *Hale* v. *Hardon*, has been recently reaffirmed in *Hale, receiver*, v. *Conant* in the U. S. District Court in Rhode Island, and in *Hale, receiver*, v. *Hilliker* in the U. S. Circuit Court

in the Northern District of New York. It has also been followed in *Hale, receiver,* v. *Tyler, admx.* in the U. S. Circuit Court in Massachusetts, 104 Fed. Rep. 757, notwithstanding the decision of the Supreme Court of that state in *Hayward* v. *Leeson,* 176 Mass. 310. See also *Howarth* v. *Lombard,* 175 Mass. 570; *Howarth* v. *Angle,* 162 N. Y. 179, and *Tompkins* v. *Blakey* decided in N. H., March 15, 1901; (Atl. Rep. June 12, 1901.)

In the case at bar it is not necessary to hold that the plaintiff receiver succeeded to the rights of either the corporation or of the creditors; his authority emanated directly from the statute under which he was appointed. It appears, from the declaration in the writ, that he was expressly authorized and directed by a decree of the Minnesota court to institute, in his own name as receiver, all auxiliary actions necessary to enforce the liability of non-resident stockholders, and it has been seen that this decree was expressly authorized by the statute under which this receiver was appointed. True, the statute does not designate the person to be appointed receiver, but intrusts that duty to the court. In *Relfe* v. *Rundle,* 103 U. S., supra, the statute made an official designation of the Insurance Superintendent as the receiver or trustee, and the power of appointing that officer was intrusted to the Executive. In neither case does the statute make a personal selection of the receiver; and no essential difference in principle can be suggested between the receiver in *Relfe* v. *Rundle,* supra, and the receiver in the case at bar, respecting the capacity to sue in a foreign jurisdiction.

As said by the court in *Hancock National Bank* v. *Ellis,* 172 Mass. 47, "It certainly concerns the due administration of justice that all stockholders, wherever they reside, should be compelled by proceedings somewhere to perform the statutory obligations towards creditors of the corporation which they have assumed by becoming stockholders." An increasing tendency has been observable in both state and federal jurisdictions, during the last decade, to sanction the enforcement of these obligations extraterritorially in any court of competent jurisdiction, except where the rights of a citizen in the state of the forum are thereby prejudiced, or the pub-

lic policy of such state is contravened. It is apparent that no rights of domestic creditors can intervene, since the law creating the stockholders' liability declares it shall be enforced for the benefit of all creditors of the corporation. That the proceeding is not opposed to the policy of any local laws in this forum is apparent from the fact that judgment was rendered for the plaintiff in the unreported cases of *Citizens' Sav. Bank*, a Kansas corporation, against *Small, Beede* and *Briggs* respectively in Androscoggin county in 1897, holding the defendant stockholders liable.

The Minnesota statute authorizing the collection from stockholders of only so much as may be necessary to satisfy the debts of the corporation, and requiring a pro rata distribution of it among all the creditors, is seen to be free from the less equitable features of those statutes which authorize a single creditor, without a pro rata assessment, to maintain an action against a single stockholder for his own benefit and not for the benefit of all the creditors.

To the end, therefore, that the right created by the laws of another state for the common benefit of all the creditors of one of its insolvent corporations, may not be practically without a remedy, this court feels constrained to hold that the principle of comity between states is broad enough to extend recognition to the plaintiff in the courts of this state.

*Exceptions overruled.    Demurrer overruled.*