44

LOUIS H. PINK, SUPERINTENDENT OF INSURANCE OF THE
STATE OF NEW YORK, AS LIQUIDATOR OF THE
AUTO MUTUAL INDEMNITY COMPANY

*vs.*

TOWN TAXI COMPANY, INC.

Cumberland.    Opinion, August 4, 1941.

*Jacob H. Berman, Edward J. Berman, Sidney W. Wernick,* of Portland and *Alfred C. Bennett* of New York City, for plaintiff.

*Abraham Breitbard* of Portland, for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

HUDSON, J.   Report from the Superior Court on agreed statement of facts. The plaintiff, Superintendent of Insurance of the State of New York, liquidator of the Auto Mutual In-

demnity Company, sues the defendant in assumpsit to recover the sum of $1,497.69 (and interest) assessed against it as a policyholder in and member of the Indemnity Company.

On June 26, 1936, the Indemnity Company, by its agent in Portland, issued its policy to the defendant with coverage from July 1, 1936 to July 1, 1937, providing for a total annual cash premium of $2,490. 87. On July 14, 1937, it issued a like policy to it to run from July 1, 1937 to July 1, 1938, for a total cash annual premium of $3,645.00. Both were issued and counter-signed at Portland. It is stipulated that the Indemnity Company was duly authorized and licensed to do business in this state as a foreign mutual automobile casualty insurance company. It is conceded that the plaintiff has the right to sue this action in this jurisdiction.

The Indemnity Company was organized under the statute law of New York State. Under its by-laws in force when these policies were issued it was provided that "The members of the corporation shall be the policy holders herein"; that "The Board of Directors shall make an assessment upon the members of the corporation when the cash funds of the corporation are less than the required reserves for unearned premiums, losses and expenses"; that "The contingent mutual liability of the members for the payment of losses and expenses not provided for by the corporation, shall not be less than an amount equal to twice the amount of, in addition to, the cash premiums written in the policy"; and that "Every member shall be liable to pay and shall pay his proportionate part of any assessment which may be laid by the corporation in accordance with the law and his contract, covering any deficiency (excess of liabilities over admitted assets) if he is notified of such assessment within one year after the expiration or cancellation of his policy."

On the twenty-fourth day of November, 1937, pursuant to Article XI of the insurance law of the State of New York, the Supreme Court of that state ordered the Indemnity Company's dissolution, annulment of its charter, and transfer of

title of its assets to this plaintiff, who was authorized and directed forthwith to take possession of its property and liquidate its business.

On the seventh day of February, 1938, the court ordered an assesssment of forty per cent against all members of the Indemnity Company, against whom an assessment might have been levied on November 10, 1937. On August 12, 1938, it ordered payment of the assessments to the plaintiff on or before the nineteenth day of September, 1938, and in case of non-payment, that the assessed should show cause on the twenty-ninth day of September, 1938, why they should not be held liable to pay such assessments. It is admitted that the defendant company was of those so assessed and that the total of its assessment on the two policies amounted to $1,497.69.

Although notices for hearings on the petitions on which said orders were based were given in accordance with the provisions of the New York statutes, both by publication and mail with postage prepaid, yet this defendant did not appear before the New York court at any hearing nor file objections to such assessments nor in any way attack or contest the validity thereof.

The plaintiff concedes that no valid judgment *in personam* was recovered in the New York courts against this defendant. It does claim, however (and we think rightly), that the New York court, having jurisdiction of the corporation itself and its corporate matters, lawfully and bindingly determined the necessity for an assessment and its amount. *Childs* v. *Cleaves*, 95 Me., 498, 508, 50 A., 714; *Johnson* v. *Libby*, 111 Me., 204, 209, 88 A., 647; Ann. Cas. 1916 C 681.

In a subsequent action brought in the jurisdiction where the defendant resides to obtain a judgment *in personam* for an assessment, the defendant may set up personal defenses, such as non-membership or payment or the statute of limitations. *Childs* v. *Cleaves*, supra, on page 509, 50 A., 714.

In an article on the assessment system and its history in Vol. 23 of the *Harvard Law Review*, it is stated on page 44:

"A further proceeding is therefore necessary to render the assessment effective as a personal liability. The assessment fixes the *rate* of liability, but the *persons* who are liable have yet to be judicially ascertained. This is done in single actions at law brought against each alleged stockholder respectively. In each of these actions the plaintiff must establish that the defendant is in truth a stockholder, and show the number of shares held by him. The defendant, as has been shown, may bring forward any personal defence, though he may not attack either the necessity for or the extent of the assessment. In other words the assessment represents the measure of damages which will be applied if personal liability as a stockholder is established."

The general rule with citations from Maine and other states and the Federal courts is stated in 48 A. L. R., page 669 as follows: "It seems well settled that a decree assessing stockholders of an insolvent corporation is conclusive against nonresident stockholders, although not served with process within the state in which it was rendered or made parties to the proceedings, in so far as the necessity for such decree and the amount of the assessment are concerned, where, under the laws of the state, the court has jurisdiction to enter such decree, and its determination is conclusive as to such questions."

While the rule may have been applied more often in actions against stockholders where double liability, for instance, is sought and in actions against members of fraternal benefit companies, we see no controlling distinction between those cases and one, as here, to recover an assessment against a member of a mutual company. 48 A. L. R., 674, *et seq*.

On the back of one of these policies are printed these words:

## "NOTICE TO POLICYHOLDERS

"1. The Insured is hereby notified that by virtue of this Policy he is a member of the AUTO MUTUAL INDEMNITY COMPANY and is entitled to vote either in person

or by proxy at any and all meetings of said company.

"2. The annual meetings are held at the Home Office of the Company in New York City on the second Tuesday of January in each year, at twelve o'clock noon.

"3. The contingent liability of the named Insured under this Policy shall be limited to one year from the expiration or cancellation hereof and shall not exceed the limits provided by the Insurance Law of the State of New York or of the State in which the Insured is domiciled and/or this policy is written,"

while on the other the words "or of the State in which the Insured is domiciled and/or this policy is written" in Paragraph 3 are omitted.

We consider that the words "Insurance Law" in Paragraph 3 have reference only to statutory law. As admitted by the defendant, there is no statutory law in Maine fixing limits as to contingent liability that would apply to these policies. That being so, the quoted additional words are inoperative and consequently Paragraphs 3 on the backs of both policies are identical in effect.

Insurance corporations are classified as stock, mutual, and mixed. In a strictly mutual company there are no stockholders. The ownership of the company is in its policyholders who are its members. A mixed company, as its name indicates, is one that has, at least in part, the nature of both stock and mutual companies, and in which a certain portion of the profits is divided among the stockholders and distribution of other funds made among the insured. Richards on the Law of Insurance, 4th edition, Sec. 5, pages 7 and 8.

In Sec. 146 of his work on insurance, Mr. May says:

"Mutual insurance, it is truly observed, is essentially different from stock insurance, and much of the litigation that has grown out of this species of insurance has been owing to inattention to this difference. . . . They need

many by-laws and conditions that are not required in stock companies; and it is necessary and equitable that each person who gets insured in them should become subject to the same obligations toward his associates that he requires from them towards himself."

And in Sec. 548:

"The principle which lies at the foundation of mutual insurance, and gives it its name, is mutuality; in other words, the intervention of each person insured in the management of the affairs of the company, and the participation of each member in the profits and losses of the business, in proportion to his interests. . . . He is at once insurer and insured."

Fraternal beneficiary associations are a specie of the mutual company as distinguished from the stock and function on the mutual plan for the sole benefit of their members. Richards, *supra*, Sec. 5.

"Mutual insurance is that system of insurance by which the members of the association or company mutually insure each other. A mutual company, therefore, is one in which the members are both the insurers and the insured." 21 Am. & Eng. Ency., Second Edition, page 253.

The insured in a mutual company holds his policy guaranteeing indemnity against loss "with a specific and limited fund out of which that indemnity is to be made good. . . . In another aspect he is a member of the corporation, made so by the very nature of the contract, and so declared by law. . . . In this relation, he is an insurer, and is affected by another and very different class of obligations." *Hill* v. *Baker*, 205 Mass., 303, 306, 91 N. E., 380, 381, 137 Am. St. Rep. 440.

"It follows from the very definition of mutual insurance that all who insure in a mutual insurance company are members of it, with all the rights and subject to all the

liabilities of membership; and membership dates in each case from the time when the insurance is effected. This is so as well when the premium is paid in cash as when a premium note is given." 21 Am. & Eng. Ency., *supra,* on pages 264 and 265.

That this Indemnity Company was strictly a mutual company as distinguished from a stock or mixed company appears in the record. No stock was issued; the policyholders, its members, completely owned its property; its members were both insured and insurers; as insured, they could collect for covered losses; as insurers, they were bound to contribute when necessity compelled assessments, legally made. As insurers they must bear their proportion of necessary assessments, not because they promised in so many words in the contract of insurance to pay assessments, but because they saw fit as policyholders to become members of a mutual insurance corporation operating under the assessment plan.

Acceptance of an application for insurance in a strictly mutual insurance company makes the applicant a member of the company. *Greenlaw* v. *Fire Insurance Company,* 117 Me., 514, 516, 105 A., 116.

The distinction between rights and liabilities "of the member as a member," that is, as an insurer, and as insured is noted in *Greenlaw* v. *Fire Insurance Company,* supra, where it is stated on page 521 of 117 Me., page 119 of 105 A.: "The statutes of the state relating to such corporations, *the by-laws of the company,* and the contract define the rights and liabilities of the member *as a member*" (Italics ours) , while "His rights and liabilities *as insured* are defined by the contract." (Italics ours.)

Beneficiary fraternal organizations operate on the mutual plan. In *Patterson* v. *Golden Cross,* 104 Me., 355, 71 A., 1016, this court stated on pages 358 and 359:

"It had a right to impose terms and conditions upon those who sought membership. All applications must be

held to have been made subject to those terms and conditions."

To the same effect see *Gifford* v. *Benefit Association*, 105 Me., 17, 19, 72 A., 680; 17 Ann. Cas. 1173; *Grand Lodge of A. O. U. W.* v. *Conners et al.*, 116 Me., 224, 228, 100 A., 1022; *Wallace* v. *United Order of the Golden Cross*, 118 Me., 184, 187, 106 A., 713; *Grand Lodge of A. O. U. W.* v. *Penney*, 118 Me., 409, 411, 108 A., 355.

In *Treadway* v. *Hamilton Mutual Insurance Co.*, 29 Conn., 68, 69, it is held that a member of a mutual company is bound to take notice of and observe its by-laws. Also see *York County Mutual Fire Ins. Co.* v. *Knight*, 48 Me., 75, 79; *Schmidt* v. *German Mut. Ins. Co.*, 4 Ind. App., 340; 30 N. E., 939, 940; 14 R. C. L., Sec. 109, page 935, 29 Am. Jur., Sec. 178, page 196.

Speaking of mutual companies, it is stated in 32 C. J., Sec. 67, pages 1018, 1019, 1020:

> "It is that form of insurance in which each person insured becomes a member of the company, and members reciprocally engage to indemnify each other against losses, any loss being met by an assessment laid on all members. . . . A mutual company is one in which the members are both the insurers and the insured; and the premiums paid by them constitute the fund which is liable for the losses and expenses, and they share in the profits in proportion to their interest, and control and regulate the affairs of the company. . . . A mutual company is somewhat of the nature of a partnership; insured becomes a member of the corporation by virtue of his policy, is entitled to a share of the profits, and is responsible for the losses to the extent of his premium paid or agreed to be paid. Yet an incorporated mutual company is not a partnership in the strict legal sense of the term."

While not necessary to have in the written contract of insurance an express promise to pay an assessment, notice of

the fact of a contingent liability, which had reference to enforcement of the right of assessment, appeared on the back of each policy. The policyholder was given notice of that liability and its extent, although as a member without such notice he would be chargeable with it. What safety for the insured in case of necessity for an assessment would there be if a member could defend on the ground that he did not know of the existence of an assessment by-law?

"And though such constitution and by-laws may not be referred to in the certificate of membership, yet they are binding upon the members of the association, and constitute a part of the contract of membership. By becoming a member of a mutual association, such as the defendant in this case, one is conclusively presumed to know its constitution and by-laws; and if he fails to acquaint himself with them, he cannot escape their force and operation by setting up his want of actual knowledge of them, nor by showing that they were not referred to in the certificate held by him." *Clark* v. *Mutual Reserve Fund Life Association*, 14 App., D. C. 154; 43 L. R. A., 390, 395.

"When a party takes out a policy, and the contract is complete, he becomes a member, and is bound by its rules and the provisions of the charter, which he is presumed to know." Vol. 2, May on Insurance, Sec. 552, p. 1255.

Also see Subsection (b), page 1108, Vol. 2, Cooley's Briefs on Insurance.

"Therefore, by reason and by the great weight of authority, when properly levied, assessments constitute a collectible debt in favor of the association, regardless of whether the member has expressly promised to pay them or whether their nonpayment occasions forfeiture of his rights and insurance." Sec. 362, page 632, Richards on the Law of Insurance.

In *Wilson* v. *Union Mut. Fire Ins. Co.*, 77 Vt., 28; 58 A., 799, it is stated:

"The members of a mutal company are presumed to have knowledge of its by-laws, and are bound by them."

But in argument it is claimed that this company had the right to issue both assessable and non-assessable policies. In the agreed statement it is stated:

"The Certificate of Incorporation is silent in regard to the issuance of assessable or non-assessable policies. It neither expressly prohibits nor expressly permits the issuance of non-assessable policies."

There is nothing in this record to show that this company ever actually did or had the right to issue non-assessable policies. Under the by-laws of the company "Every member shall be liable to pay and shall pay his proportionate part of any assessment . . ." and every policyholder is a member. Hence, we see no warrant for the argument that this mutual company had any right whatsoever to issue a non-assessable policy.

*Judgment for the plaintiff in the sum of $1,497.69, with interest from August 12, 1938, date of demand.*