## ORLEANS COUNTY.

### APRIL TERM, 1834.

Present, Hon. STEPHEN ROYCE,
" JACOB COLLAMER, } *Assistant Justices.*
" JOHN MATTOCKS,

ORLEANS
*April,*
1834.

STATE *vs.* ZADOCK & BAXTER BOWMAN.

Having a *crucible* in possession for the purpose of counterfeiting, does not constitute an offence under the 31st section of the act for the punishment of high crimes and misdemeanors.

An allegation in an indictment on said statute, that the coins intended to be counterfeited "*were current silver coins of this state, and of the United States,*" is not equivalent to the words in the statute, "*which shall be made current by the laws of this or the United States,*" and therefore insufficient on demurrer.

This was an indictment upon the 31st section of the statute for the punishment of high crimes and misdemeanors, which relates to counterfeiting. The indictment contained four counts, all of which were abandoned except the following:

"And the jurors aforesaid, upon their oath aforesaid, do further present, that the said Zadock Bowman and Baxter Bowman, on the twenty-second day of January, in the year of our Lord one thousand eight hundred and thirty-three, with force and arms, at Coventry, in the county of Orleans aforesaid, feloniously and unlawfully, did have in their possession a certain tool or other instrument, called a *crucible,* made of hard substance and material, to the jurors aforesaid unknown: said crucible then and there being constructed and contrived for the purpose of melting, mixing, roasting, debasing, altering and counterfeiting other base metals, to wit, copper and zinc and tin, to the imitation and likeness of good, legal and pure *silver*: they, the said Zadock and Baxter, then and there having the said crucible in their possession, for the purpose of forging, altering and counterfeiting the current silver coin of this state, and of the United States, called *half-dollars*; and then and there intending to employ and use the said crucible in and about the forming and altering and counterfeiting the said silver coin,

called *half-dollars;* which forged, altered, and counterfeited and base coin, so intended then and there to be forged, altered and counterfeited by them the said Baxter and Zadock, would then and there be of the similitude and likeness of the good, current and legal silver coin coined at the United States Mint, and the current coin of this state and the United States, called *half-dollars,* contrary to the form of the statute in such case made and provided, and against the peace and dignity of this state."

ORLEANS,
*April,*
1834.

State
*vs.*
Z, & B. Bow-
man.

To this count the respondent demurred, and joinder by the state.

After argument by

*I. F. Redfield,* State's Attorney, and

*Fletcher & Cushman* for respondent.

The opinion of the court was delivered by

MATTOCKS, J.—This was an indictment with four counts, to which the respondents demur. The three first counts are abandoned, and the question now is, whether the fourth is sufficient. There are two principal questions upon this count:

1st, Is the respondents' having a *"crucible"* in their possession, for the purpose of counterfeiting silver money, an offence under the statute? This is to the merits.

2d, Whether the indictment contains any sufficient allegation that the coins intended to be counterfeited were such as " were made current by the laws of this or the United States?" This is to the form.

The statute in question is the 31st section of the act for the punishment of high crimes and misdemeanors; and the part of the section which is material, is in the words following:—
"That if any person shall forge, counterfeit or alter any of the coins that shall be made current by the laws of this or the United States, or shall pass or put off, or shall offer or procure to be offered, passed, or put off, any such forged, false or counterfeit coins, knowing them to be such, or shall make or mend, or have in his possession, any *die, stamp or other instrument or tool,* or shall buy or sell any such die, stamp or other instrument or tool, for the purpose of forging or counterfeiting any of the coins aforesaid."

It is agreed on all hands, that to constitute the offence, the respondents must have had in their possession some of the things comprehended in the description of the articles named, and for

Orleans,
April,
1834.

State
vs.
Z. & B. Bow-
man.

the purpose of counterfeiting; and the intent being properly charged in this particular, the question is, whether a crucible is such an article.

It is obvious, that as dies and stamps are named, they are considered tools or instruments, and that other tools and instruments of some sort are intended to be, and are, included by the words "other instruments or tools;" and the arguments seem to have assumed, that a crucible is a tool or instrument of some sort, and the controversy to have been, whether it was of such a sort as the act includes.   But is a crucible a tool or instrument?

"Crucible—(crucibellum, Lat.)—is a chemist's melting-pot, made of earth, so called because they were formerly marked with a cross.   Take a quantity of good silver, and put it in a crucible, or melting-cruse, and set it on a fire well covered round with coals."—Johnson's Folio Dictionary.

" Crucible, a pot for melting metals."——Johnson's Small Dictionary.

And so in substance in all dictionaries, including Webter's.

What is an instrument?  " A tool."   What is a tool?  "Any insrument."—Ibid.

Tools and instruments are synonymous words, especially when applied to things rather than persons.   They are so used in the 33d section, where the sheriff and other officers are directed to secure "such tools and instruments," and to give information from whom and where "such tools" were taken. Neither in common language, or in correct English, is a pot for melting or boiling, called a tool.

The primary object of the statute is, to prevent bad money being passed; and the more securely to guard against its being passed, it not only prohibits the making of it, but the keeping of tools wherewith to make it.   In order, however, to render the possession of such tools criminal, under the statute, it must be accompanied with an  intent  to make or pass such counterfeit money.   To guard the avenues to crime, the law begins as far before the actual perpetration of the crime as it pleases, and makes acts, otherwise innocent, if accompanied with the intent, criminal.   But in the construction of such statutes, the very act prohibited, not some other act that may indicate the intent as plainly, is to be considered criminal; for, although the legislature might have made it penal to have a crucible in possesion, with intent to counterfeit, yet it is not very clear why they

ORLEANS,
*April,*
1834.

State
*vs.*
Z. & B. Bow-
man.

should, more than to have gold and silver and the baser metals, which are to be melted in it, and without which, also, counterfeiting cannot be practised. A crucible is in common use with citizens, as well as artists, and is an article on open sale, and is bought and used by gold and silver-smiths, who make beads and spoons, unlike the stamp and other appropriate tools for counterfeiting; which are wholly or mainly for that purpose, and which therefore cannot be readily obtained, and for honest purposes are not wanted, and, when possessed, afford greater evidence of a bad intent. We think, therefore, that if *instrument* and *tool* may be considered as *generic* terms, *crucible* is not one of their family ; that in a statute highly penal, to call it a *tool* or *instrument* for counterfeiting, would be a construction too latitudinarian.

The next inquiry is, whether the allegation, for the purpose of forging, altering and couunterfeiting " the current silver coins of this state and of the United States, called *half-dollars*," is tantamount to " which shall be made current by the laws of this or the United States." If the half-dollars were made current by the laws of the United States, that is sufficient to fix the crime, and *this state* may be laid out of the case. The word " *made*," also, may be considered of no force, as the clause means, *shall be current by the laws of the United States:* that is, at the time the offence is committed, and we may treat the indictment as accordingly charging " current silver coin of the United States," the same as money *made* current by the laws of the United States. Does " *of* the United States" mean the same as " *in* the United States ?" If it does, it is not sufficient ; for money may be current *in* the United States, that is not made so by any law. If " *of* the United States" means money belonging *to* or owned *by* the United states, it is dark and scarcely sensible, and without an averment that the United States owned all true half-dollars, and an inference that they owned no money but what they had made lawful, current money, it would still be ambiguous ; so that the question seems to be, whether current silver money *of* or *in* the United States, is necessarily such as is made current by the laws of the United States ; and we think not, as *current* means *circulatory, common, popular*, which may all be, with money without a law of the United States, or any law; and as it respects some kinds of silver coin, until the late act of Congress, was so in fact. It is also

ORLEANS,
April,
1834.

State
vs.
Z. & B. Bow-
man.

averred, that the coin so intended to be counterfeited, would be of the likeness "of the good, current and legal silver coin, coined at the United States Mint, and the current coin of the United States."

If legal coin, coined at the United States Mint, does necessarily imply, that it was made legal by the laws of the United States, as the power to make coin lawful is alone in the United States; and if the word *lawful*, connected with its "being the current coin of the United States," is equal to saying that it was the lawful current money of the United States; and if, as the United States only can make the law by which it becomes lawfully current, and therefore by every conclusive inference, it is coin made current by the laws of the United States; still the legal objection is only palliated, not removed: for this conclusion is arrived at, from what is indirectly expressed, and does not distinctly appear from what is directly alleged. The general rule on this point is as laid down by Hawkins, and adopted by Swift: "That the charge must not be stated argumentatively, but in direct and positive language." And although it is now well settled, that in declaring upon a statute offence, in an indictment, it is not necessary to declare in the words of the statute—the only difficulty is in applying these general rules to particular cases, wherein indeed in most cases consists the art of judging. In common pleadings, it is proper to declare according to the legal effect of the paper or facts, and not upon the incidents or facts that produce such effect; and in indictments, which it is said should be a plain, brief and certain description of an offence, committed by any person, the allegation should be categorical, and plainly expressed; and although the main fact is so surrounded by other alleged facts that it must be true, yet why indulge in such circumlocution? As, for instance, the day and year must be stated when an offence is committed. Suppose in lieu of the direct and common way of saying, *on the 22d day of January, A. D.* 1833, it should say, *on the day next after the 21st day of January, in the year next before the year A. D.* 1834, to a demonstration, this last describes the true day : but ought such a departure from legal usage to be tolerated? In the case of *State* vs. *Little*, (1 Vt. R. 331,) which goes as far to sustain an indictment as any case that is to be found, one objection was that the indictment did not allege that "the defendant dug up, disinterred and remo-

ved the body of a dead person, or human body." Upon this point the court say, "But it is urged that there is no averment that the dead body remained interred at the time it was dug up by defendant—that it only appears argumentatively. This would have been plausible if there were no allegation of interment. That the defendant dug up the body, would strongly imply that it was in a state to be dug up—that is, that it was interred: yet this would be inference only."

This reasoning seems correct and applicable to the case in hand; and although the court said more upon the objection quoted, as well as upon other points made, and supported the indictment, this is cited to show what has been decided an inference, and not an averment.

In *United States* vs. *Batchelder*, 2 Gal. R. 15, Judge Story says, "that it is not necessary, in general, in an indictment on a statute, to follow the exact wording of the statute, but it is sufficient if the offence be set forth, with substantial accuracy and certainty, to a reasonable intendment." And he applies the rule to the word "*violently*," which was used in the indictment, in lieu of "*forcible*," in the statute. This we deem a fair example of what is an allowable departure, in such cases. The word "*chosen*" expressed the whole meaning of the one rejected, and somewhat more of the same quality, which was well enough, as the greater contains the less; and the writer of an indictment, may, if he can, better the language of a statute : though generally it is not professional prudence to attempt it. But the sense of the act must be fully retained, and clearly expressed.

Upon the whole, we are of opinion that the allegation in question is not equivalent to the requirement of the statute, to constitute the offence charged.

The judgment of the county court is reversed.