## COMMONWEALTH *vs.* DAVID R. FULLER.

The courts of this State have jurisdiction of the offence of having false money, counterfeited in the similitude of any gold or silver coin current by law or usage within the State, knowing the same to be false and counterfeit, and with intent to utter or pass the same as true.

THE indictment, in this case, alleged that the defendant, on the 15th day of April 1844, "at Lowell, in the county of Middlesex, had in his custody and possession, at the same time, ten similar pieces of false and counterfeit coin, of the likeness

and similitude of the silver coin current within this Common wealth, by the laws and usages thereof, called Mexican dollars, with intent then and there the said pieces of false and counterfeit coin to utter and pass as true, he the said David R. Fuller then and there well knowing the same to be false and counterfeit, against the peace of the Commonwealth, and contrary to the form of the statute in such case made and provided."

The trial was in the court of common pleas, before *Merrick*, J. The defendant " objected to the jurisdiction of the court, and contended that the offence of which he was charged in the indictment was cognizable only in the courts of the United States, where he was liable to be indicted and tried ; and that the statute of this Commonwealth, under which he was indicted, was unconstitutional and void in its application to the offence charged in the indictment, and also that it was repugnant to, and in conflict with, the constitution and laws of the United States." The court overruled the defendant's objections, and directed that the trial should proceed. The jury found the defendant guilty, and he alleged exceptions to the ruling of the court.

*J. G. Abbott*, for the defendant, cited most of the cases mentioned in the opinion of the court, and also 3 Story on Const. of U. States, § 1118. *Mannhardt* v. *Soderstrom*, 1 Binn. 143. *U. States* v. *Campbell*, 6 Hall's Law Journal, 113. *The State* v. *M'Bride*, 1 Rice, 400.

*Huntington*, (District Attorney,) for the Commonwealth.

HUBBARD, J. This indictment is founded upon § 15 of c. 127 of the Rev. Sts., which declares that " every person, who shall counterfeit any gold or silver coin, current by law or usage within this State, and every person, who shall have in his possession, at the same time, ten or more pieces of false money or coin counterfeited in the similitude of any gold or silver coin current as aforesaid, knowing the same to be false and counterfeit, and with intent to utter or pass the same as true, shall be punished by imprisonment in the state prison for life, or for any term of years."

It is admitted that Mexican dollars are made a part of the

legal currency of the United States, by act of congress passed June 25th 1834. *St.* 1834, *c.* 71.

The jury have found the defendant guilty of the offence charged in the indictment, and the case is brought before this court upon these exceptions: That the offence proved is one over which the courts of this Commonwealth have no jurisdiction; but that the defendant is liable to be indicted and tried in the courts of the United States only: That the law of this Commonwealth, giving its courts jurisdiction of the offence charged in the indictment, is repugnant to, and in conflict with, the constitution and laws of the United States.

The case now presented, though it involves the question of state jurisdiction, does not require a minute review of the various decisions upon that branch of constitutional law, to enable us to arrive at a satisfactory conclusion, if different acts of congress, passed in relation to certain offences punishable by the constitution, are to be received as expressing the law.

Before referring to those statutes, it may be remarked that, in respect to those subjects which are created by the constitution itself, or are enumerated as within its exclusive jurisdiction, it has not been doubted but that questions or cases growing out of those subjects are within the peculiar province of the courts of the United States to determine. On the other hand, the fact, that jurisdiction in certain cases is given by the constitution, does not in itself carry with it, by the mere force of the grant, an exclusive right to the exercise of such jurisdiction. But the character of such right, whether exclusive or concurrent, depends either on the nature of the subject, the express language of the constitution, or the manner in which it has been enforced by legislative action.

In regard to crimes which existed prior to the constitution, and were the subject of state legislation, or were punishable as offences at common law, and the prevention of which is essential to the peace and good order of the community, though such crimes are also forbidden by the constitution of the United States, and the authority to punish the commission of them is conferred by congress upon the federal courts; still, unless such

grant of power is exclusive, by the terms of the constitution, or is made exclusive by acts of congress, the concurrent right of the state courts to try persons accused of such crimes is not necessarily taken away.

This, as before observed, we think follows from the language of different acts of congress.

In the judiciary act of September 24th 1789, 1 U. S. Laws, (Story's ed.) 53, no such exclusive power is conferred by the 9th and 11th sections, which declare in what cases the courts of the United States shall have exclusive jurisdiction ; but the language of the 11th section is this : " And shall have exclusive cognizance of all crimes and offences cognizable under the authority of the United States, except where this act otherwise provides, or the laws of the United States shall otherwise direct." On referring to the act of April 21st 1806, 2 U. S. Laws, (Story's ed.) 1032, which is made " for the punishment of counterfeiting the current coin of the United States, and for other purposes," after prescribing the punishment of the various offences growing out of counterfeiting and uttering false money, the last section provides " that nothing in this act contained shall be construed to deprive the courts of the individual States of jurisdiction, under the laws of the several States, over offences made punishable by this act." And in the act of March 3d 1825, 3 U. S. Laws, (Story's ed.) 1999, " more effectually to provide for the punishment of certain crimes against the United States, and for other purposes," in which there are sundry enactments against the forging and uttering of counterfeit money, the same proviso is contained in the last section.

By the statute of 1789 already referred to, exclusive jurisdiction is not conferred on the United States courts, where the laws of the United States shall otherwise direct. The above mentioned statutes of 1806 and 1825 give such other direction, and in them a concurrent jurisdiction is clearly recognized, in the state courts, over crimes of counterfeiting the gold and silver coins of the United States, or which are made current by the laws thereof, or for uttering the same, or bringing them into the United States with intent to utter them.

If then the provisos contained in these statutes are constitutional, no sufficient reason can be given why a person, committing the offence charged in the present indictment, is not liable to be tried before the state courts as well as before those of the United States; nor why, if he is first arraigned before a state court having cognizance of the offence, such court may not proceed to trial, and to the rendition of a judgment which will be final and conclusive.

It is argued, however, that the proviso in the statute of 1825 extended only to state laws then in force ; and a reference is made to the case of *U. States* v. *Paul*, 6 Pet. 141. But that case decided simply that the 3d section of the *St.* of March 3d 1825 was to be limited to the laws of the several States in force at the time of its enactment. That section related to offences committed in forts, dockyards, &c. the site whereof is under the jurisdiction of the United States, and to the punishment of such offences as were not specially provided for by any law of the United States ; and it enacted that a person so convicted in a court of the United States should receive the same punishment as would be inflicted by the state court, if the same offence were committed in the body of such State. The reason of such a restriction is obvious ; because the state laws were not in force in such places, so ceded to the United States ; and it was a mode adopted to regulate the punishment of offences not named, by a reference to state laws in which they were specified. But in regard to the proviso at the close of the statute, such a limited construction is not warranted by the terms used, nor by the intent expressed. It points, not to existing state laws, as prescribing a measure of punishment to be observed in rendering judgments in the United States courts, but to the rights of States to exercise such jurisdiction generally, in regard to the offences mentioned in the statute.

It is contended also, that it is unconstitutional to subject a person to the operation of two distinct laws upon the same subject, and inflicting different pains and penalties. But I hold that the delinquent cannot be tried and punished twice for the same offence, and that the supposed repugnancy between the severa.

27 *

laws does not, in fact, injuriously affect any individual. The man who commits the crimes runs the hazard, under which jurisdiction he may be subjected to punishment; and after violating the law, it comes with ill grace from him to complain of the penalty. If he were indeed liable to be punished twice for the same offence, he might well argue against oppression; and the existence of such liability would go far to prove the unconstitutionality of the law. But while the proviso in the act of congress remains unrepealed, the criminal cannot be thus exposed; as the court which first exercises jurisdiction has the right to enforce it by trial and judgment, by the well established principles of law relating to the jurisdiction of courts. See 5 Wheat. 31.

It is also said that the president of the United States has power to pardon offences before conviction, while the governor of the Commonwealth is restricted to cases after conviction But the power of pardon is not a right upon which any criminal can insist; and the mode in which it may be exercised does not enter into the question of jurisdiction of state laws for the punishment of crimes, of which a party can legally avail himself as a ground of error.

The question arising in this case has been brought before other state courts, and differing decisions have been made. In Missouri, it was held that the court had no jurisdiction. *Mattison* v. *The State*, 3 Missouri Rep. 421. In Indiana, it was decided, in a similar case, that the court had jurisdiction over the offence. *Chess* v. *The State*, 1 Blackf. 198. Like decisions have been made in South Carolina. *The State* v. *Antonio*, 2 Const. Rep. 776. *The State* v. *Tutt*, 2 Bailey, 44.*

Other cases also have been cited to show that, where congress have legislated on a given subject, state laws on the same

---

* In several other state courts, parties have been indicted for offences relating to the current coin of the United States, and no exception has been taken to the jurisdiction. *The State* v. *Young*, 1 Overt. 230. *Peek* v. *The State*, 2 Humph. 78. *Rasnick* v. *Commonwealth*, 2 Virg. Cas. 356. *The State* v. *Collins*, 3 Hawks, 191 *The State* v. *Bowman*, 6 Verm. 594. *Miller* v. *The People*, 2 Scam. 233.

subject are unconstitutional and void. *Martin* v. *Hunter's Lessee,* 1 Wheat. 305. *Houston* v. *Moore,* 5 Wheat. 1. *U. States* v. *Lathrop,* 17 Johns. 4. And in the late decisions on the rights of slave-holders, *Prigg's case,* 16 Pet. 617, 618, one of the learned judges, in giving his opinion, says, " if congress have a constitutional power to regulate a particular subject, and they do actually regulate it in a given manner, and in a certain form, it cannot be that state legislatures have a right to interfere, and, as it were, by way of complement to the legislation of congress, to prescribe additional regulations, and what they deem auxiliary provisions for the same purpose. In such case, the legislation of congress, in what it does prescribe, manifestly indicates that it does not intend that there shall be any further legislation to act upon the subject matter. Its silence as to what it does not do is as expressive of what its intention is as the direct provisions made by it."

But without inquiry here how far this reasoning is free from objection, it is sufficient to say, in this case, that congress have neither by their words nor their silence manifested the intention of having either exclusively or actually regulated the whole subject of crimes, respecting the uttering of counterfeit money. On the other hand, feeling the ease and frequency with which such crimes are committed, and the difficulty of bringing criminals to punishment, they expressly recognize the right of the States to act upon the same subject, and to punish the same or similar offences by their own laws. And Washington, J. in the case of *Houston* v. *Moore,* 5 Wheat. 27, in referring to the statute of April 21st 1806, say's, " it is clear that, in the opinion of congress, this saving was necessary, in order to authorize the exercise of concurrent jurisdiction by the state courts over those offences." And he adds, shortly after, " but by these savings congress did provide that the jurisdiction of the federal courts, in the specified cases, should not be exclusive, and the concurrent jurisdiction of state courts was instantly restored, so far as, under state authority, it could be exercised by them." And this view is sustained by Chancellor Kent, in his Commmentaries. 1 Kent Com. (1st ed.) 374, 375 ; (5th ed.) 399.

The statutes of this Commonwealth, for the punishing of crimes against the currency, and for uttering counterfeit money knowing it to be false, were in existence before the formation of the constitution of the United States, and the same have been reënacted, from time to time, with additions to reach evasions of the law not specifically provided against; and the same have been adopted as part of our revised code. But the learned revisers have expressed no doubt as to the constitutionality of these acts, or of the want of jurisdiction in our courts.

Upon this view of the subject, we do not feel called upon to bring, nor consider ourselves warranted in bringing, our own statutes into doubt, or to pronounce against the constitutionality of the provisos of the United States statutes. The construction and legality of them may be determined by the highest tribunal, when any party, aggrieved by the decision of this or any other state court, sees fit to remove his case by writ of error into the supreme court of the United States, and there have such decision revised. But till such a revision takes place, and the state laws and those of congress are pronounced to be unconstitutional, we feel bound to enforce the statute of our own Commonwealth against the offence charged in the present indictment.

It was urged, by the learned district attorney, that the offence of having false money in possession, with intent to utter the same, is not provided against by the statutes of the United States, and is in fact *casus omissus*; and we are strongly inclined to that opinion, and that the case might possibly be decided on the fact of such omission. But as our judgment is not influenced by this alleged omission of the particular offence charged among those enumerated in the acts of congress, we do not enlarge on this view of the case, as presented by the counsel for the government. And for the same reason, we do not comment on the language of the constitution itself, Art. 1, § 15, whether it contemplated the punishment of the crime set forth in this indictment, under the provision " for the punishment of *counterfeiting* the securities and current coin of the United States."

*Exceptions overruled.*