FRED W. FRINK'S ADMR. *v.* BROTHERHOOD ACCIDENT CO.

May Term, 1902.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, STAFFORD and HASELTON, JJ.

Opinion filed March 6, 1903.

*Accident insurance policy—More hazardous occupation— Meaning of term "cattle tender"—Construction.*

The term "cattle . . . tender in transit," used to designate an occupation classed by an accident insurance company as more hazardous than the one named in the policy, does not include a person tending a horse in transit.

The rule, that insurance contracts are construed against the company, applies to those issued by a mutual company.

ASSUMPSIT on an accident insurance policy. *Pro forma* judgment for the plaintiff for the principal sum named in the policy, on an agreed statement of facts, at the March Term, 1902, Washington County, *Start,* J., presiding. The defendant excepted.

*Dillingham, Huse & Howland* and *H. W. Kemp* for the plaintiff.

The words "cattle shipper and tender in transit" do not apply to the case of a man travelling with a horse. *Brown* v. *Bailey,* 4 Ala. 413; *Hubotter* v. *State,* 32 Tex. 479.

Insurance contracts are construed against the company. *Brink* v. *Insurance Co.,* 49 Vt. 442; *Mosley* v. *Insurance Co.,* 55 Vt. 142.

The trip with the horse did not amount to a change of occupation. *Eaton* v. *Insurance Co.,* 82 Me. 570; *Insurance Co.* v. *Frohard,* 134 Ill. 228; *Accident Asso.* v. *Kelsie,* 46 Ill. App. 371.

*George W. Wing* for the defendant.

The insured was engaged in an occupation more hazardous than that in which he was insured, and the right of recovery is limited by the policy. *Aldrich* v. *Accident Asso.,* 149 Mass. 457; *Insurance Co.* v. *Martin,* 133 Ind. 376; *Cram* v. *Accident Asso.,* 58 Hun. 11; *Insurance Co.* v. *Taylor,* 34 S. W. 78; *Assurance Co.* v. *Bach,* 102 Fed. 229; *Accident Asso.* v. *Hilton,* 61 Ill. App. 100; *Knapp* v. *Accident Asso.,* 53 Hun. 84.

Munson, J.   The plaintiff's intestate was insured as a barber proprietor, not working.   The policy provided that if the holder should be fatally injured "while temporarily or otherwise engaged in or exposed to a hazard pertaining to an occupation or employment classed by the company as more hazardous" than that written upon the policy, the company's liability should be only that "provided for the class in which such more hazardous occupation or exposure is rated in the manual of the company."   The occupation of "cattle shipper and tender in transit" is rated in the manual as more hazardous than that for which the deceased was insured.   The deceased was killed while travelling in a box-car in charge of a horse in transit.   If this employment is not classed in the manual as more hazardous than the insured's usual occupation, this alone will deprive the company of the benefit of the clause relied upon, and it will not be necessary to consider the question presented by the further facts contained in the agreed statement.

So the question for determination is whether the term "cattle," as used in defendant's policy, should be construed to include horses.   Lexicographers give the word two meanings; one, restricted to domestic bovine animals; the other, covering

any live stock kept for use or profit.   The first is ordinarily given as its common meaning; the second, as a special signification, less frequent now than formerly.   The meaning of the word has come in question in a few reported cases.   In *Brown v. Bailey,* 4 Ala. 413, it was held that a declaration for an injury to cattle was not supported by evidence of an injury to mules, as the term did not, in common parlance, include mules. In *Decatur Bank* v. *St. Louis Bank,* 21 Wall. 294, the question arose upon the plaintiff's guaranty of a dealer's drafts against shipments of cattle, and it was held that hogs were included in the term "cattle."   The Court referred to several English cases where the word was given its broader signification, as showing that this meaning was permissible, and considered that this should be taken as the meaning of the parties, in view of the purpose of the contract and the course of dealing apparent from the evidence.   In cases involving the construction of statutes relating to fences, it seems generally to have been held that the word applies to all domestic quadrupeds. 5 A. & E. Ency. Law (2d Ed.), 771.   But in *Enders* v. *McDonald,* 5 Ind. App. 297, where a statute of this character was considered, the Court reached a contrary conclusion; saying that the word, in its ordinary sense, as used in this country, meant only beasts of the bovine genus.

It is certain that in this country the word "cattle" is not ordinarily used as including horses, and it should not be construed to include them as used here, unless the Court can properly infer from the purpose of the provision that the parties so intended.   It may be that the protection sought by the company would require an application of the provision to horses as well as cattle, but this alone will not justify an inference of mutual understanding.   In the construction of insurance policies, it is considered that, inasmuch as the com-

pany prepares the contract and selects the language used, provisions restrictive of the general obligatory clause should be construed strictly against the company. *Billings* v. *Metropolitan Insurance Co.,* 70 Vt. 477 (485). We think that, in determining the language of a provision like this, the company should select words that will accomplish its purpose without their being given any unusual meaning.

*Judgment affirmed.*

The defendant seeks a re-hearing on the ground that the rule of construction applied in arriving at the decision is not applicable to mutual companies. It is held in the cases to which we are referred that the members of a mutual company are charged with knowledge of its rules and regulations. This is undoubtedly an established doctrine, but it comes short of sustaining the defendant's contention. One may be charged with knowledge of a by-law, and yet be entitled to a favorable rule regarding the construction of its ambiguous terms. The reason given for this rule is as applicable to the contracts of companies like the defendant as to those of other companies. It will be seen from the list of cases cited in 3 Berryman's Insurance Digest, § 3012, that the rule has been applied to companies of every class, and we have nowhere found any suggestion that its application in the case of mutual companies is inconsistent with the doctrine above stated. We think a further hearing is unnecessary.

*Motion overruled.*