### Isaac S. Wilson *v.* Union Mutual Fire Ins. Co.

May Term, 1904.

Present: Rowell, C. J., Tyler, Munson, Start, Watson, and Haselton, JJ.

Opinion filed August 26, 1904.

*Fire    Insurance—Mutual    Company—By-Laws—Mode    of Proof—Steam Farm Engine—Defined.*

In an action on a fire insurance policy, when the defendant, by its charter name, is characterized as a mutual company, and the plaintiff's application shows that a premium note was contemplated, and the policy recites that the assured has become a member by giving a premium note, and on trial plaintiff's counsel said, "There is no question about the proposition that he is a member

of the company," and "they have confessed that they are a mutual company," and urged the court to "remember that this is a mutual company," the plaintiff cannot, in this Court, raise the question of whether there is any evidence tending to show that defendant is a mutual company.

The members of a mutual fire insurance company are presumed to have knowledge of its by-laws, and are bound by them, especially when they are printed on the same sheet with the policy, and the attention of the assured is directed to them by notice in the body of the contract.

When what purport to be extracts from the by-laws of a mutual fire insurance company are printed on the back of its policy, which is issued to and accepted by the assured, and by him held until the loss, in a suit to recover upon the policy they must pass for what they purport to be till some action is taken to impeach them, and those by-laws need not be produced on the trial in any other form.

Though it was said in *Wilson* v. *Ins. Co.*, 75 Vt. 320, that, there being no kind of engine known as a "steam farm engine" the term must be held to cover any engine adapted to farm uses, this did not imply that, if the existence of such an engine were established, the opposite conclusion would necessarily follow.

The mere designation of a particular make of engine as a "steam farm engine" will not entitle it to recognition as such, to the exclusion of other engines of the same style.

When the by-laws of a mutual fire insurance company provided that the use of a "steam farm engine" within a certain distance of the buildings insured shall render the policy void, the use, within the prohibited distance, of a portable engine, adapted to all farm purposes for which an engine can be used, will vitiate the policy, though it appear that a certain other kind of steam engine, which is also adapted to the same uses, and equally likely to communicate fire, and which differs from the engine in question only in particulars relating to its greater mobility, is known as a "steam farm engine."

GENERAL ASSUMPSIT on a fire insurance policy. Plea, the general issue with notice. Trial by jury at the September Term, 1903, Orleans County, *Stafford*, J., presiding. Verdict ordered for the defendant; and judgment thereon. The plaintiff excepted.

This case has been once before in the Supreme Court. See 75 Vt. 320.

*J. W. Redmond* for the plaintiff.

The plaintiff was entitled to go to the jury upon the question whether there was, at the time the policy was issued, a species of engine known as a "steam farm engine," and if so, whether the engine in question came within that species. *Carrington* v. *Ins. Co.*, 53 Vt. 418; *Mosley* v. *Ins. Co.*, 55 Vt. 143; *Enos* v. *Ins. Co.*, 67 Cal. 621; *Appleby* v. *Ins. Co.*, 45 Barb. 454; *Morton* v. *Fairbanks*, 11 Pick. 367; *Ins. Co.* v. *Favorite*, 46 Ill. 263.

*Young & Young* for the defendant.

The court correctly ordered a verdict for the defendant. The engine in question is a "steam farm engine" within the meaning of the by-law. The evidence on the second trial has not changed the description of the engine which this Court has once held to be a steam farm engine. 75 Vt. 320.

MUNSON, J.   The plaintiff claims there was no evidence tending to show that the defendant is a mutual company. The company is characterized as mutual by its chartered name; the plaintiff's application shows that a premium note was contemplated; the policy recites that the assured has become a member of the company by giving a premium note.   In an early discussion plaintiff's counsel said, "There is no question about the proposition that he is a member of the company"; and later in the trial the same counsel said, "They have confessed that they are a mutual company", and urged the court to "remember that this is a mutual company."   Having taken this position below, the plaintiff cannot now raise the question of proof.

The defendant being a mutual company, it is not neces-sary to inquire whether the warning contained in the policy, "Read the by-laws on back of policy", was a sufficient reference to make what is so printed a part of the contract. The mem-bers of a mutual company are presumed to have knowledge of its by-laws, and are bound by them. *Frink's Admr.* v. *Brotherhood Accident Co.,* 75 Vt. 249, 54 Atl. 176; *Tread-way* v. *Hamilton Mutual Ins.* Co., 29 Conn. 68; *Mitchell* v. *Lycoming Mutual Ins. Co.,* 51 Pa. St. 402; *Donville* v. *Far-mers Mutual Fire Ins. Co.,* 113 Mich., 158; *Bourgeois* v. *Mutual Fire Ins. Co.,* 86 Wis. 402; *Pfister* v. *Gerwig,* 122 Ind. 567. Whatever might be urged against this rule if the means of ascertaining the by-laws were not furnished to the insured, it cannot be deemed objectionable when the by-laws accompany the policy upon the same sheet, and the attention of the in-sured is directed to them by a notice in the body of the contract.

But the plaintiff insists that there is no evidence that the so-called by-laws printed on the back of his policy are the by-laws of the defendant company. The by-laws were not produced on the trial in any other form, and it was not neces-sary that they should be. These provisions were published as the by-laws of the company upon a policy which the plaintiff accepted and held until the loss, and in a suit to recover upon the policy they must pass for what they purport to be until some action is taken to impeach them.

The by-laws provide that the use of steam farm engines in any building insured, or within one hundred feet of such building, without the consent of the company, shall render the policy void. The plaintiff was using a steam engine, located within the prohibited distance, at the time of the loss. It was held in this case when here upon a former trial as reported in the 75 Vt. 320, 55 Atl. 662, that inasmuch as

it did not appear that there was any class or kind of engine known as a "steam farm engine", the term must be held to cover any engine adapted to farm purposes. Upon this trial the plaintiff undertook to show that there was a species of engine known generally as a "steam farm engine." Upon the objection of defendant's counsel and the suggestion of the court, without exception being taken by the plaintiff, the inquiry was limited to this: "Whether there was a species of engine known to the trade in Vermont by the name of a steam farm engine?" A deposition tending to show that a steam farm engine was manufactured in Ohio and extensively used outside of New England, was received in evidence, but solely for the purpose of supporting other evidence limited as above stated. No exception was taken to the ruling restricting the effect of the deposition. At the close of the plaintiff's evidence the court directed a verdict for the defendant, on the ground that there was no evidence tending to show that at the time and place when and where the contract was entered into the words "steam farm engine" had acquired such a special and restricting meaning that the parties must be taken to have used them in the restricted sense, and not in the general and ordinary sense.

It is clear that there was evidence tending to show that there is a steam engine, known to the trade as a farm engine, and extensively used by farmers in the middle and Western states. This consists of a horizontal boiler with a drop fire-box, and a horizontal engine attached to the top of the boiler, mounted on four wheels for convenience of transportation, and having the smoke-stack hinged so that it can be lowered when the machine is being moved. The machine plaintiff had consisted of an upright boiler with a fire-box at the base and a detachable smoke-stack, and an upright engine attached

to the side of the boiler, which machine was placed on trucks for transportation and stood on the platform of the trucks while in use.

There was but little evidence regarding the use of the first described engine in this section. The deposition before referred to was given by a Western manufacturer of farm machinery, who testified that he knew nothing about the shipments of his firm, but knew that some of these engines had been sent to Vermont from having seen one at South Barton. A member of a firm of machinists in St. Johnsbury testified that previous to May, 1900, there was a species of engine known to the trade in Vermont by the name of a steam farm engine, and described it substantially in the terms first above given. It appeared further that he knew of this only from the catalogues and circulars sent by the manufacturers to the dealers; that he had never bought or sold such an engine, and did not know that one had been used by any farmer in Vermont. This witness identified the picture of a horizontal engine on wheels as a steam farm engine; and another witness, on being shown this picture, said he had seen such engines on farms in Vermont. The witness was not cross-examined on this statement, and nothing further appears as to the extent of his observation. There was also evidence tending to show that there was such an engine on a farm at St. Albans Bay.

The case seems to have been presented upon a mistaken view as to the scope and effect of our former decision. It was said in the opinion that, there being no kind of engine known as a "steam farm engine," the term must be held to cover any engine adapted to farm purposes. This did not imply that if the existence of such an engine were established the opposite conclusion would necessarily follow. When that

fact is shown there come the further inquiries, whether the differences in construction and use between the kind so designated and other portable steam engines are so marked, and whether the application of the name to that particular kind is so general and exclusive, that the parties may reasonably be supposed to have used and understood the term as having reference only to that kind.

It appears that there are many manufacturers making a mounted horizontal engine, and that different names are given to what are substantially the same thing; many of them being called agricultural engines, or portable engines. It appears further that engines of this style, whatever the name given them, are not confined to any particular use. It seems that the engine described in the plaintiff's evidence, and designated by its manufacturer as a farm engine, is also used for hauling on the road, drilling for coal, gas, oil and water, and for grading. It appeared further that the only one of this make which the manufacturer knew of in Vermont was used in a mill for sawing lumber and turning spools and bobbins. It also appeared that the upright engine in controversy, although used by its owner to draw logs from his pond to his mill, had been procured and used by different persons in previous seasons to do the same farm work for which it was being used by the plaintiff.

It is clear that the mere designation of some particular make as a farm engine will not entitle it to recognition as a farm engine to the exclusion of other engines of the same style. If this were so, a mounted machine called a farm engine would be within the prohibition, and a like machine called an agricultural engine, or a portable engine, would not be. It seems equally clear that the mere designation as a farm engine of one of two varieties, both of which are fitted and

used for farm work, will not justify such a distinction. Nor can the better adaptation to farm work of the one so designated be important, unless it appears that this superiority has led to its special recognition or more extensive use us a farm engine.

Our inquiry relates to two steam engines, capable of being used and in fact used for farm purposes, constructed as far as touches the matter of danger from fire in the same way, and both frequently designated as portable engines. The differences pointed out bear only upon the mobility of the machines, and these cannot serve to distinguish them in applying the provision in question. The horizontal position, wagon attachment, and hinged stack, do not touch the essential matter, and cannot be supposed to have been points of distinction that the parties had in mind. We think the evidence fails to present a case upon which the plaintiff can recover under our former decision.

There is nothing in *Frink's Adm. v. Brotherhood Accident Co.,* 75 Vt. 249, 54 Atl. 176, that conflicts with this view. The use by an insurer of the term "cattle" as covering all live stock kept for use or profit may well be objected to as likely to mislead the insured. But this probability cannot be urged as a reason for confining the term "steam farm engine" to such of the portable engines as are placed horizontally and upon wheels of their own. The insured could not but have known that the engine he was using for his farm work was the same in every respect that bore upon the purpose of the prohibition as any other variety of steam engine adapted to farm use.

*Judgment Affirmed.*