Mr. Justice .CURTIS
 

 delivered the opinion of the court.-
 

 • This is an’ appeal from a decree of the Circuit Court of the United States for, the district of Massachusetts, in a suit in equity, to compel the specific performance of a contract to make reinsurance on the ship Great Republic. The Circuit Court made a decree in favor of the complainants, and the respondents appealed.
 

 ■ It appears that the complainants, a corporation established in New York, having made insurance of the ship Great Republic to a large amount, authorized Charles
 
 W-
 
 Storey, at Boston, to apply for-and obtain-from either of the insurance companies there- reinsurance to the extent of ten thousand dollars. Pursuant to this authority, on the 24th December, 1853, Mr. Storey made application to the president of the defendant
 
 *319
 
 corporation for reinsurance, at the same time presenting a paper, partly written and partly printed, as embodying the terms of the application. The paper was as follows:
 

 “Reinsurance is wanted by the -Union Mutual Insurance Company, New York, for $10,000, on the ship Great Republic, from December 24, 1853, at noon, for six months ensuing.
 

 “This policy is to be subject to such risks, valuations, and condition, including risk of premium note, as are or may be taken by the said Union Mutua! Insurance Compány, and payment of loss to be made at the same time. 3 per cent.
 

 “Binding,-,
 
 President.
 

 “New York, December
 
 24, 1853.”
 

 The president, after consultation with one of the directors of the company, declined to take the risk for a premium of three per cent., but offered to take it for three and a half per cent.
 

 Mr. Storey replied, that was more than he was authorized to give, and left the office. He immediately apprised his principals, by a telegraphic despatch, that the risk could be taken for three and a half per cent, for six months, or six pér cent, a year. The reply, on the same day, was, “Do it for six months, privilege of cancelling if sold.” This reply did not come to the hands of Mr. Storey until Monday, the 26th day of December, when he went to the office of the respondents, and found there the president of the company, but not any other person, as the day was generally observed, by merchants, bankers, and insurers, as a holy day, Christmas having fallen on Sunday.
 

 Mr. Storey informed the president he was willing to pay three and a half per cent, for the reinsurance described in the proposal, took a pen and altered the three per cent, to three and a half per cent., by adding
 
 \
 
 to 3 on the. paper, and it is admitted by the answer that the president thereupon assented to .the terms contained in the paper, but informed Mr. Storey that no business was done at the office on that day, and that the next day he would attend to it. The president then took the paper and retained it.
 

 To a special interrogatory contained in the bill, the defendants answer:
 

 “ That its president did assent to the terms and provisions in said paper, as the terms and provisions of a reinsurance to he completed and executed by this defendant, by the making and execution of a policy in due form, according to the requisitions of the laws of Massachusetts, and the by-laws of this defendant, hut they were not assented to' as a.present insurance.1’
 

 
 *320
 
 ■Upon these facts, we are of opinion there was an agreement to reinsure according to the terms contained in the proposal, concludectby and between Mr. Storey and the president at this interview on Monday the 26th of December. The paper contained every particular essential to a contract to make reinsurance. It ascertained the subject of insurance; the commencement and duration of the risk; the parties, the interest of the assured, and the premium; and for the special risks, the valuations, and conditions, it referred to the original contract of insurance made by the complainants, by reason of which they were seeking reinsurance.
 

 On Saturday, the president had offered to contract in accordance With the paper, saving a difference of one-half per cent, on the premium.
 

 It was argued that it could not be considered an acceptance, on Monday, of a continuing offer madé on Saturday, because, when the complainants authorized Mr. Storey to give three and a half per cent., they at the same time imposed a new condition by the words, “privilege of cancelling if sold.” But Mr. Storey testifies, and this is not denied by the .answer, or by any witness, that when he made the application on Saturday, and before the president had named the premium which he was willing to take, the president said he supposed that they would have to cancel the policy, if the vessel should be sold within the 'time; and that he (Storey) assented thereto; and that at the interview on Monday, when this point was referred to, the president said the usage in Boston would, settle it, and he would not put anything concerning it into the policy; and after some conversation concerning the usage, Mr. Storey agreed to take the policy without any mention of the privilege of cancellation. Under these circumstances, we do not perceive that the requirement of this privilege can be considered as at all varying, in the apprehension and meaning of the-parties, the terms of the acceptance on Monday, from the terms of the proposal on Saturday. But whether, under all the circumstances, this should be deemed to have been a continuing offer, we do not think it necessary to determine; because, on Monday, .either the president’s offer of Saturday was accepted by Mr. Storey, and its acceptance made known to the president, or the proposal was renewed by Mr. Storey, and accepted by the president. The fact that others chose to abstain from business .on that day did not prevent these parties from contracting, if they saw fit to do so; and when one.of them either accepted a continuing offer, br renewed a proposal which was accepted by the other, they made a binding contract. Nor dó we think the allegation of the answer, that the president in
 
 *321
 
 formed Mr. Storey that no business was done in the office that day, hut the next day he would attend to it, can reasonably be interpreted to mean .that he ■ had not made, or intended to make, a contract for a policy. Their fair meaning is, that though he had agreed to make the 'insurance, as the seeretaiy and clerks were not .there, and the books not accessibly, any action on the agreement must be deferred to the next day. The words cannot be understood to mean, that he would on the next day attend to what he had already done; and he had already made a contract for reinsurance, to be executed on the. next day, by issuing a policy in due form to carry that agreement into effect.
 

 On leaving the office of the defendants, Mr. Storey immediately informed the plaintiffs that he had effected this contract, and on the night of the same day the ship Great Republic was destroyed by fire, while lying at a wharf in the city of ÍTew York. On the twenty-seventh of December, the complainants tendered their note for the agreed premium, and demanded the policy of reinsurance. The defendants declined to make' the policy. Several grounds have been insisted on in support of this refusal :
 

 . The first is, that by force of a statute of the State of Massachusetts, (Rev. Stats., ch. 37, secs. 12, 13,) insurance corporations can make valid policies of insurance only by having them signed by the president and countersigned by the secretary. But we are of opinion that this statute only directs the formal mode of signing policies, and has no application to agreements to make insurance.
 

 Such we understand to be the view taken of this statute by the Supreme Court of Massachusetts. (New England Ins. Co.
 
 v.
 
 De Wolf, 8 Pick., 63; [Stat. 1817, ch. 120, sec. 1;] McCullock
 
 v.
 
 The Eagle Ins. Co., 1 Pick., 278; Thayer
 
 v.
 
 The Med. Mu. Ins. Co., 10 Pick., 326. See also Trustees
 
 v.
 
 Brooklyn Fire Ins. Co., 18 Barbour, 69; and Carpenter
 
 v.
 
 The Mu. Safety Ins. Co., 4 Sand. Ch. R., 408.)
 

 It is further insisted, that by the law merchant insurance can be effected only by a contract in writing. We dó not doubt that the commercial law of all countries has treated of insurance as made in writing by an instalment, denominated by us a policy; and there may be provisions of positive law, in some countries, requiring an agreement to make a policy to be in writing. But there is no such statute of frauds in the State of Massachusetts.'
 

 The common law must therefore determine the question; and under that law, a promise' for a valuable consideration to make a policy of insurance is no more required to be in writing
 
 *322
 
 than a promise to eiecute and deliver a Rond, or a bill of exchange, or a negotiable note. So it has been, held by other courts, and, we think, on sound principles. (18 Barbour, 69; Hamilton
 
 v.
 
 The Lycoming Company, 5 Barr., 339. See also Sanford
 
 v.
 
 The Trust Fire Ins. Co., 11 Paige, 547.)
 

 The respondents’ counsel has argued that their president had not authority to enter into an oral contract binding the company to make insurance. They admit it has been usual for the president to rnake such contracts; but they say that when he has done so, the policy was not. issued until the next day, and no risk is understood to have commenced under such an undertaking until the policy issues. Whether a risk be commenced when the contract for' insurance is made, or only when the policy issues, must depend on the terms of the contract. Where, as in the present case, there is an express contract to take the risk from a past day, there is no room for any understanding that it is not to commence until a future day. Such an understanding would be directly repugnant to the express terms of the contract. And if the defendants have held out their president as authorized to. make oral contracts for insurance, no secret limitation of this authority would affect third persons, dealing with him in good faith and without notice of such limitation. Besides,' the supposed limitation would be inconsistent .with the authority itself. It is, in effect, that though the president is authorized to make oral promises to effect insurance, the company, are at liberty to execute those promises, or to refuse to do so, at their option.
 

 The power of the president to enter into this contract to make insurance is nowhere denied in the answer. All that can beak on this subject occurs in certain statements concerning the usual course of business of the company. It seems to have been assumed by both parties, that whatever the president actually did in this transaction, he did for the company, and so as to Render them responsible for his acts. And no question was raised on this point in the court below. Still it is incumbent on the complainants to offer competent and sufficient evidence of the .authority of the president to bind the company, though less evidence may be reasonably sufficient when no issue concerning it is made on the record.
 

 We think such evidence is in the case. Mr. Storey deposes, that during the three years next preceding this transaction, he had effected upwards of three hundred contracts for reinsurance, with the presidents of ten different insurance companies of Boston;. and that one, or possibly two, of these presidents usually signed an accepted application — the others all contracted orally. Considering that all the incorporated insurance
 
 *323
 
 companies in Boston have similar charters, and the same kind of officers to conduct their business, we think this is competent evidence, that presidents of such insurance companies in that city are generally held out to the public as having the authority to act in this manner. And upon a point not put in issue in the record, and on which no more than, formal proof ought, to he demanded, we hold this evidence sufficient. (Fleckner
 
 v.
 
 The Bank of the United States, 3. Whea., 360; Minor
 
 v.
 
 The Mechanics’ Bank of Alexandria, 1 Peters, 46.)
 

 The fair inference is, that if the general authority of the president to contract for the corporation had been put in issue,, it could have been shown, by the most plenary proof, that the presidents of insurance companies in the city of Boston are generally held out to the public by those companies as their agents, empowered, to receive and assent, either orally or in writing, to proposals for insurance, and to bind their principals by such assent.
 

 Uor do we deem it essential to the existence of a binding contract to make insurance, that a premium note should have' been actually signed and delivered. The. promise of the plaintiffs to give a note for the premium was a sufficient consideration for the promise to make a policy. It is admitted, that the usage is to deliver the note when the policy is handed to the assured. If the defendants had tendered the policy, we have no doubt an action for not delivering the premium note would have at once lain against the plaintiffs; and we think there was a mutual right on their part, after a tender of the note, to maintain an action for non-delivery of the policy. In Tayloe
 
 v.
 
 The Mutual Fire Ins. Co., (9 How., 390,) it was held that a bill in equity for the specific performance of a contract for a policy could be maintained. And it being admitted that in this case the defendants would be liable as, for a total loss on the policy, if issued in conformity with the contract, no further question remained to be tried, and it was proper to decree the payment of the money, which would have been payable on the policy, if it had been issued.
 

 The decree of the Circuit Court is affirmed.