## A. RAYMOND GREENLAW

*vs.*

## AROOSTOOK COUNTY PATRONS MUTUAL FIRE INSURANCE COMPANY.

## Aroostook.    Opinion December 14, 1918.

*Contracts of fire insurance.    Construction of renewals.    Rights of parties after appli-
cation for insurance has been accepted.    Distinction between a contract or
agreement to issue a policy of insurance and renew a policy already
issued.    Rule where by-laws and contract of policy of
insurance conflict.    Which shall govern in fix-
ing the rights and liabilities of parties.*

In the year of 1912, the defendant company issued to the plaintiff, a policy of
insurance against fire, to the sum total of $3000.00 for the period of five years
then next ensuing, in varying·amounts, on his dwelling house, ell, wood-house,
barn and shed, and on hay and grain, "while contained in said buildings" in
Presque Isle.    The policy was in statutory form, and carried a rider that sanc-
tioned and concerned the use about the insured premises, of gasolene and kero-
sene engines and electric motors; related to the placing of·supply and storage
tanks thereat;. and inhibited the use of stove-pipe projecting through the roof or
wall of any of the insured buildings, "or any building within one hundred feet."
It contained no other provision limiting the company's liability.

Somewhat less than two years later, it issued to the plaintiff another policy of
insurance, this time for $800.00 on his potato-house, and for $500.00 on his
farming tools, for a five year term.    This policy also is of standard form; it
restricts insurance on farm tools too "while contained in his farm buildings" and
attached is rider counterpart to that on the first.

When the first policy was about expiring, plaintiff applied for its renewal.    On the
day that the policy expired the application for renewal was accepted, but new
policy was not made up until two days later, when it was antedated so as to run
from the expiration of that renewed.    While it was still in the course of trans-
mission to the plaintiff through the mails, the property it insured was completely
devastated by fire.    The same fire destroyed farming tools of the admitted
value of $445.00, insured by the 1914 policy.    At the time of the fire the tools
were contained in the buildings covered by the third or renewal policy.

The renewal policy carries a rider differing from those on the first and second policies in that it superadds a clause in these words:  "This company shall not be liable on any risk, for a greater amount than $3000.00 on any policy, or policies issued by this company, on any one set of buildings, or their contents. Meaning hereby to limit the total liability of this company to the aggregate sum of $3000,00 whether one or more policies be issued, covering the same subject matter."

*Held:*

1. The rider provision of the renewal policy is prospective only. It does not act backward. It does not relate to and impair the obligation of the second contract.

2. When the by-laws and policy conflict, if the contract is within the power of the corporation, the policy will prevail over the by-laws, and determine the rights and liabilities of the parties. By that instrument the conventional obligations of the company are fixed.

3. Unless otherwise expressed, a renewal will be construed to be subject to the terms and conditions contained in the original policy. From the moment that the application is accepted by the company, the plaintiff is entitled to insurance protection effective from the expiration of the first policy. Not evidenced by a policy, for the policy had not been made; nor existing validly as an oral contract of insurance, for the undertaking of the contract was not to be performed within one year. But a valid, oral contract in and by which the defendant agreed, for the sufficient consideration that in the usual course of business and from the very nature of the agreement within one year, it would make and deliver to the plaintiff, in conformity with their compact in that behalf, a policy of insurance in his favor.

4. The distinction between a contract to issue a policy of insurance or to renew one already issued, and the policy to be issued or renewed in pursuance of such agreement has always been recognized by the courts and the text writers.

5. The agreement to issue or renew a policy is one thing. The policy issued or renewed is another and different thing. The contract to renew having been made, the mere want of a policy will not prevent the plaintiff from recovering. Having furnished the agreed consideration for the undertaking of the other, each party is entitled to its promised benefits.

Action on the case to recover upon two policies of insurance issued by defendant company. Defendant filed plea of general issue; also brief statement. At close of evidence case was reported to Law Court upon certain agreed statements and stipulations. Judgment in accordance with opinion.

Case stated in opinion.

*Doherty & Tompkins,* for plaintiff.

*W. R. Roix, and Shaw & Thornton,* for defendant.

SITTING:  CORNISH, C: J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, JJ.

DUNN, J.  As its name suggests, and the record of this case evinces, the Aroostook County Patrons Mutual Fire Insurance Company is a domestic mutual fire insurance company.  In other words, it is an aggregation of persons, endowed by the State of Maine with the attributes of corporate existence, and in that manner providing a mutual basis method, by which the associated individuals help to bear the burden of pecuniary loss incident to the destruction, by the happening of the peril of fire, of the property of one of their number.  Fire insurance thus conducted, means that if, during a prescribed period of time, any of the associated persons shall suffer loss by the accident of fire, the corporation of which they are members will indemnify him, having reference to the actual value of his insured property when it was destroyed, to an amount not exceeding the sum of money specified in an executory contract called a policy.  Every person who takes insurance in such a company is both an insurer and insured.  He insures not only his own property, but he helps to insure the property of all the other members, during the term of his own membership in the mutual system corporation, that is to say, during the term of his policy.  R. S., Chap. 53, Sec. 35.  He proportionately contributes, in the first instance by an assessable premium note (R. S., Chap. 53, Sec. 36), to the assets of the company.  Out of the assets, he is entitled to indemnification, within and as contemplated by the terms of his policy.

Acceptance by a mutual fire insurance company of an application for insurance makes the insured a member of the company.  *Carleton v. Insurance Company*, 109 Maine, 79.  In that way, on September 11, 1912, the plaintiff became a member of the defendant corporation. It thereupon issued and delivered to him, a policy of insurance against loss or damage by fire, to the sum total of $3000.00, for the period of five years then next to ensue, in varying amounts, on his dwelling-house, ell, wood-house, barn and shed, and on hay and grain "while contained in said buildings," in Presque Isle.  For convenience, that policy will be referred to herein as the first.  In form it was of statutory standard.  It fittingly carried what is known as a rider.  The rider, which was printed as a part of the slip or sheet of paper that

contained the blank form on which the insurance was distributed and described, sanctioned and concerned the use about the insured premises, of gasolene and kerosene engines and electric motors; related to the placing of supply and storage tanks thereat; and inhibited the use of stove-pipe projecting through the roof or wall of any of the insured buildings, "or any building within one hundred feet." It contained no other provision limiting the Company's liability.

On June 19, 1914, somewhat less than two years later, plaintiff applied to defendant company for another policy of insurance, this time for $800.00 on his potato-house, and for $500.00 on his farming tools. Policy issued for a five year term, restricting insurance on farming tools too "while contained in his farm buildings." This policy, which will be styled the second, also is of standard form, and attached has rider counterpart of that on the first.

By application bearing date of August 30, 1917, in anticipation of its expiration on September 11th, the plaintiff applied for renewal of the first policy. His application was made on a blank which the Company had prepared to be used for such purpose. Excepting as to the term for which insurance was desired, and as to the date thereof, this application and that submitted for the first policy were practically identical. There was nothing about either even remotely to give an inkling of the defense endeavored to be made in this case. Defendant's directors, at a meeting held on the day that the first policy expired, accepted the application for renewal. But a new policy was not made up until two days later, when it was antedated so as to run from the expiration of that renewed. Late in the day on which the policy issued, it was mailed by the defendant to the plaintiff in the same town. The plaintiff's mail was supplied by a carrier route which started from a nearby town. For some reason, the policy did not come to the plaintiff, in the mail, until after noontime on September 15th, four days after its date, and two days later than the date of the day on which it is said to have been mailed. While it was still in the course of transmission through the mails the property it insured was completely devastated by fire. The same fire destroyed farming tools of the admitted value of $445.00, insured by the second policy. At the time of the fire, the tools were contained in the buildings covered by the third or renewal policy.

The renewal policy too carries a rider.   This rider differs from those attached to the first and second policies in that it superadds a clause in these words:

"This company shall not be liable on any risk, for a greater amount than $3000 on any policy, or policies issued by this company, on any one set of buildings, or their contents.   Meaning hereby to limit the total liability of this company to the aggregate sum of $3000, whether one or more policies be issued, covering the same subject matter."

It is the contention of the defendant, as a first proposition, that notwithstanding it issued to the plaintiff, and he paid for and relied upon, two different policies of insurance or indemnity, to the aggregate amount of $4300.00, and regardless of his loss by fire to the extent of $3445.00, both policies in force, of property covered by them, yet the rider provision of the renewal policy operates to restrict recovery to $3000.00, the maximum of the particular policy to which it is attached. Expressed somewhat differently, to recovery of $445.00 for the burned farming tools, and of $2555.00 for the dwelling house and other buildings ravaged in totality by fire, for the reason that the casualty consumed all the property together, and that it then comprised "one set of buildings and their contents," as well as the "same subject matter," within the purpose of the rider on the renewal policy.   Or, if not that, then the greatest possible liability under both policies, in view of the rider provision of the last, is $3000.00.

The proposal to renew the first policy moved from the plaintiff, almost two weeks in advance of its expiration by limitation of time. He accompanied the offer by his promissory note in advance payment of the premium.   What he said, must be held to have been equivalent in significance to saying to the company:   "If agreeable to you, when the first shall have expired, issue to me a new policy of insurance, for a further period of five years, on the same terms as the old.   Counting that it will be acceptable to you to comply with my request, here is advance payment of the premium charge."   The company accepted the proposal or offer of the plaintiff.   Its secretary so swears.   There was mutual assent; the minds of the parties had met.   And the agreement was founded on consideration.   Nothing remained to be done to perfect fully the renewal of the insurance, excepting the execution by the company of the policy, in accordance with the terms agreed upon, and the delivery of it in that form to the insured.   Unless other-

wise expressed, a renewal will be construed to be subject to the terms and conditions contained in the original policy. *Bickford* v. *Insurance Company*, 101 Maine, 124. From the moment that his application was accepted, plaintiff had insurance protection, effective from the expiration of the first policy. Not evidenced by a policy, for the policy had not been made. Nor existing validly as an oral contract of insurance, for the undertaking of the contract was not to be performed within one year. R. S., Chap. 114, Sec. 1. But a valid, oral contract in and by which the defendant agreed, for a sufficient consideration, that in the usual course of business, and from the very nature of the agreement within one year, it would make up and deliver to the plaintiff, in conformity with their compact in that behalf, a policy of insurance in his favor. Said Chief Justice APPLETON: "The distinction between a contract to issue a policy of insurance or to renew one already issued, and the policy to be issued or renewed in pursuance of such agreement, has always been recognized by the courts and the text writers. It is the same as that existing in bills of exchange, between an agreement to accept, and the acceptance of the bill. They are distinct. The agreement to issue or renew a policy is one thing, the policy issued or renewed is another and different thing." *Walker* v. *Metropolitan Ins. Co.*, 56 Maine, 371.

The contract to renew made, the mere want of a policy would not prevent the plaintiff from recovering. *McCullough* v. *Eagle Ins. Co.*, 1 Pick., 278; *Commercial Insurance Company* v. *Union Insurance Company* 19 How., 318. Having furnished the agreed consideration for the undertaking of the other, each party is entitled to its promised benefits. The defendant company made up a policy and sent it to the plaintiff. Ordinarily, the policy of insurance is to be regarded as the final contract between the parties, and the effect of its acceptance is to supersede all preliminary agreements in respect to the insurance. 16 A. & E., Enc. of Law, 856. In the case in hand, the policy was not in accordance with the accepted proposal. Before even suggestion to him that the new policy varied from that which it renewed, the plaintiff went to the company's office, and there, still without hint of any change in the form of the policy, from the application that he had filed, and from information to him imparted by the company, he made and submitted proof of loss under the renewal policy. At the same time he submitted proof of loss under the second policy. Later

on, in the same day that he filed the proofs, he received the renewal policy, and since has retained it. Unless that policy substantially conformed to the accepted·proposal, he was not bound to take it. As Justice Swayne said, in *Insurance Company* v. *Young's Adminis-trator*, 23 Wall., 85; "The law involved is expressed by the phrase, it takes two to make a bargain." Equity would enforce specific per-formance. *Tayloe* v. *Insurance Co.*, 9 How., 390. An action at law would have lain against the company for breach of its agreement. *Commonwealth Insurance Company* v. *Union Insurance Company*, 19 How., 318. But the plaintiff, though he testified he made objection when the rider was called to his attention, retained the policy, and based his suit upon it, and upon the second policy. The defendant asserts, that having elected to take the renewal policy, and having instituted suit upon it, the plaintiff must be held to have taken it in entirety. From one point of view, the contention is not without merit. But as we see the situation, the plaintiff's rights were not abridged by the acceptance of the renewal policy. The rider pro-vision of that policy is prospective only. It does not act backward. It does not relate to, and impair the obligation of, the second contract. So far as the second policy is concerned, it is as if the invoked rider provision had never been. As to that policy, the rider may recede into the region of shadows. Moreover, we find that the second policy and the renewal policy, within the meaning of the rider attached to the latter, relate to different subject matters. The by-laws of the company, concerning risks, to which defendant points, is not applic-able to the loss of the farming tools. It expressly relates to risks on buildings, and to such risks exclusively.

The defendant, however, argues that the rider is merely declaratory of another clause of the same by-law in force when the policies respec-tively were issued. And that the plaintiff, as a member of the corpor-ation, is presumed to have known the provisions of the by-laws, from the beginning of his membership in the company, and by that fact thereby is bound. Of the contract of mutual insurance the by-laws may be a part, even by reference. *Russell* v. *Mutual Fire Ins. Co.*, 107 Maine, 362. Under the doctrine of consent and waiver, the com-pany may waive the by-laws, in whole or in part. When the by-laws and the policy conflict, if the contract is within the power of the corporation, the policy will prevail over the by-laws, and determine

the rights and liabilities of the parties. *Union Mut. Fire Ins. Co.* v. *Keyser*, 32 N. H., 313; *McCoy* v. *Northwestern Mutual Relief Assn.*, 92 Wis., 557. The statutes of the state relating to such corporations, the by-laws of the company, and the contract define the rights and liabilities of the member as a member. His rights and liabilities as insured are defined by the contract. *Com.* v. *Mass. Mut. Ins. Co.*, 112 Mass., 116, 22 Cyc., 1413. Whether a by-law of a mutual Insurance Company is part of the contract between the company and the insured, will depend, not on the fact that the by-law has existence, but on the correct interpretation of the terms of the policy. By that instrument the conventional obligations of the company are fixed.

In this case, the defendant had power to make binding contracts of insurance, agreeably to the terms contained in the Maine standard policy. It issued such a contract. It now contends that that contract bound it as an insurer, not according to the policy, but according to an inconsistent by-law. The tender and delivery by it of the several policies was tantamount to a declaration in relation to each, that there were no by-laws inconsistent with their terms. It is sufficient to say, in relation to the by-law, that the company that made and adopted it also had the power to unmake it or to waive it; it cannot be held that an action is without foundation simply because a policy of insurance in suit is in violation or apparent violation of a by-law of the company. *Stoehlke* v. *Hahn*, (Ill.) 42 N. E., 150. It is a question of the interpretation of the plaintiff's policy.

The change in the form of the rider is significant, but by no means conclusive or inexplicable. Still, unexplained, it would seem that there would have been no need to make the change, if the by-law already was part of the policies previously issued.

Under the stipulation of the report, we are of the opinion that the plaintiff is entitled to recover in this action under the second policy, for the property loss by fire, the sum of $445.00; under the third or renewal policy, as for a total loss, the further sum of $3000.00; making in all $3445.00, to which shall be added interest from November 15, 1917, the date when the indemnity became and was due and payable.

*Judgment accordingly.*