Kermit KNOWLES

v.

## UNITY COLLEGE.

Supreme Judicial Court of Maine.

Argued March 10, 1981.
Decided May 8, 1981.

Joseph M. Jabar (orally), John P. Jabar, Daviau, Jabar & Batten, Waterville, for plaintiff.

Alton C. Stevens (orally), Marden, Dubord, Bernier & Chandler, Waterville, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, GLASSMAN,* ROBERTS and CARTER, JJ.

ROBERTS, Justice.

In order to relieve financial pressures resulting from escalating costs and declining enrollments, many colleges have resorted to the drastic remedy of dismissing tenured professors or even eliminating tenure entirely. Unity College, a small private college in Unity, Maine, financially strained

---

* Glassman, J., sat at oral argument and in the initial conference but did not participate further in this decision.

since it opened in the 1960s, followed this second route by canceling its tenure policy in 1971. The plaintiff, Kermit Knowles, a professor at Unity since 1969, did not receive tenure before its repeal. He taught under successive one-year contracts until 1978, when he was not rehired. Unity gave no formal statement of cause for not reappointing him. Through this action for damages and reinstatement filed in Superior Court, Somerset County, Knowles contended that he was entitled to tenure rights and that Unity could not refuse to reappoint him without cause. The Superior Court denied relief, and Knowles has appealed. We affirm the judgment.

■ Tenured status generally confers on its holder an indefinite appointment or right to reappointment terminable by the institution only for specified reasons. It usually is granted only after a probationary period. The short-lived Unity College tenure policy, instituted in January and revoked in June, 1971, required the college president to make a tenure decision before a professor's sixth year of teaching. For those who earned tenure, the college could terminate employment only (1) in case of a financial emergency, in which event the college could cancel all tenure, or (2) because of elimination of a professor's program, or (3) for cause reflecting unprofessional conduct. The Unity Board of Trustees invoked the first reason when it canceled all tenure in 1971. Although Knowles had not then received tenured status under the formal policy, he contends that he was entitled to the same protections. Therefore, he reasons, the college could not refuse to renew his contract absent one of the stated conditions. Since Unity neither gave a statement of cause nor invoked the other conditions, Knowles concludes that he is entitled to reappointment.

Although the evidence suggests other possible theories for relief, the parties and the court at pretrial conference narrowed the issue for trial to: "Did plaintiff have the right to automatic renewal of [his] employment contract by virtue of being a *TENURED* faculty member?" At trial, the parties presented extensive documentary and testimonial evidence on whether Unity had a tenure policy. Finding that it did not, the court concluded that Knowles could not acquire tenured status and was not entitled to reappointment.

■ Because Unity is a private college, any tenure rights must arise by express or implied contract, not, as may occur in public institutions, by statute, e. g., 20 M.R.S.A. §§ 161(5), 473(4) (1965 & Supp.1980), or as a result of due process entitlement, *see Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The written employment contract consisted only of a signed letter giving the professor's salary and position and the dates when the school year began and ended. Other contract terms, however, may arise by implication from other sources. *See Greenlaw v. Aroostook County Patrons Mutual Fire Insurance Co.,* 117 Me. 514, 520–21, 105 A. 116, 119 (1918).

Knowles contends that although it abolished its formal tenure program, Unity adopted other policies providing the same protection. He points particularly to the tenure guidelines of the American Association of University Professors (A.A.U.P.) contained in the "1968 Recommended Institutional Regulations on Academic Freedom and Tenure." These guidelines concern several aspects of faculty employment, including terms of appointment, termination, grievance resolution, and academic freedom, as well as tenure. The section on tenure recommends a maximum probationary period of seven years after which a professor achieves tenured status. Since the guidelines are binding only on colleges adopting them, Knowles cites several sources, including minutes of the Board of Trustees meetings, statements by the college president, and passages in the faculty handbook and other materials as evidence that Unity had adopted the A.A.U.P. guidelines as official college policy. Because he taught at Unity for more than seven years, Knowles reasons, he therefore automatically acquired tenure.

The trial court disagreed, finding that although Unity may have adopted other

**222**

portions of the A.A.U.P. guidelines, it had not adopted the tenure provisions. Therefore, the court reasoned, length of service alone could not confer benefits of tenure. Because the college had not taken any other action to confer tenure on Knowles, he was consequently not entitled to its protections and the college could refuse to reappoint him without cause. We find no error in the court's conclusions.

The evidence Knowles cites does not establish that Unity adopted as college policy the tenure provisions of the A.A.U.P. guidelines. The evidence does show that the college followed other provisions in the guidelines. It also indicates, however, that the administration did not adopt the tenure provisions when it adopted other sections of the guidelines, and it emphasizes Unity's lack of a tenure system.

For example, in December 1971, the Board of Trustees considered a report by an educational policy committee containing several recommendations, including one on faculty policy recommending that the college follow the A.A.U.P. guidelines. The Board voted unanimously to adopt portions of the committee's report preceding the faculty policy section. After discussing that section and its relation to tenure and the college's finances, the Board voted to "charge" the administration with implementing the faculty policy of the A.A.U.P. guidelines. It added as a condition, though, that "such implementation [is] to be consistent to the financial condition of Unity College." The Board then reaffirmed that Unity was operating under a financial emergency. Since the Board had suspended tenure only seven months earlier because of financial difficulties, this condition on its "charge" to the administration suggests that the Board did not intend to reestablish a tenure policy at that time.

Knowles points to the minutes of a 1973 Board meeting, which quote the chairman as stating: "We acknowledge that the A.A.U.P. guidelines are in effect." Knowles concludes that this statement is proof of the Board's adoption of all of the A.A.U.P. guidelines, including the tenure section.

Although the statement is ambiguous, the previous entries in the minutes suggest that it related to the Board's discussion of termination procedures, not tenure. Furthermore, the minutes disclose no vote or any other action by the Board establishing a change in its tenure policy.

In a letter to the faculty summarizing the results of the same meeting, the college president wrote that the Board "reaffirmed the A.A.U.P. Guidelines on Academic Freedom and Tenure as Unity College policy." Taken alone, this passage could suggest Unity's adoption of the A.A.U.P. tenure policy. Later administrative statements, such as those in the faculty handbook and an accreditation self-study, emphasized, however, that Unity had no tenure policy even while reaffirming Unity's adherence to other portions of the A.A.U.P. guidelines. Pronouncements of general policy, especially absent evidence of reliance on them, do not override these specific statements. *See Beitzell v. Jeffrey*, 643 F.2d 870, at 876 n. 15 (1st Cir. 1981). Knowles's presence at later faculty discussions of reintroducing tenure in the future suggests that he could not reasonably rely on the president's general statement as a guarantee of faculty tenure.

Knowles also contends that having canceled its tenure policy because of a financial emergency, Unity could refuse to reappoint him only for financial reasons. He concludes that Unity's hiring a replacement to fill his position shows that was not its motive. Because Knowles had not acquired tenure protection either before or after revocation of the formal policy, however, Unity was free to refuse him reappointment without relating its refusal to the financial emergency or any other condition. *See Sindermann v. Perry*, 430 F.2d 939, 944 (5th Cir. 1970), *aff'd*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

On the issue tried, therefore, the trial court's findings were not clearly erroneous. The record supports a finding that Unity had no express tenure policy, and it does not contain sufficient evidence to require a finding of an implied tenure right. We do not suggest that a person in

Knowles's position could not obtain a right to contract renewal on the basis of an implied contract arising out of official statements by the college administration. We hold only that the Superior Court did not err in finding insufficient evidence of an official tenure policy or of an implied tenure right.

The entry shall be:

Judgment affirmed.

All concurring.